# HAYNES *v.* UNITED STATES.

No. 236.   Argued October 11, 1967.—Decided January 29, 1968.

86

*Charles Alan Wright* argued the cause for petitioner. With him on the brief was *Ernest E. Figari, Jr.*

*Harris Weinstein* argued the cause for the United States. With him on the brief were *Acting Solicitor General Spritzer, Assistant Attorney General Vinson, Beatrice Rosenberg* and *Kirby W. Patterson.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner was charged by a three-count information filed in the United States District Court for the Northern District of Texas with violations of the National Firearms Act. 48 Stat. 1236. Two of the counts were subsequently dismissed upon motion of the United States Attorney. The remaining count averred that petitioner, in violation of 26 U. S. C. § 5851, knowingly possessed a firearm, as defined by 26 U. S. C. § 5848 (1), which had not been registered with the Secretary of the Treasury or his delegate, as required by 26 U. S. C. § 5841. Petitioner moved before trial to dismiss this count, evidently asserting that § 5851 violated his privilege against self-incrimination, as guaranteed by the Fifth Amendment.[1] The motion was denied, and petitioner thereupon

---

[1] Petitioner's motion asserted merely that § 5851 was "unconstitutional," and the order denying the motion does not indicate more precisely the substance of petitioner's contentions. His subsequent arguments, both in the courts below and here, have, however, consistently asserted a claim of the constitutional privilege. No suggestion is made by the Government that the claim of privilege was not sufficiently made.

entered a plea of guilty.[2] The judgment of conviction was affirmed by the Court of Appeals for the Fifth Circuit. 372 F. 2d 651. We granted certiorari to examine the constitutionality under the Fifth Amendment of petitioner's conviction. 388 U. S. 908. For reasons which follow, we reverse.

## I.

Section 5851[3] forms part of the National Firearms Act, an interrelated statutory system for the taxation of certain classes of firearms. The Act's requirements are applicable only to shotguns with barrels less than 18 inches long; rifles with barrels less than 16 inches long; other weapons, made from a rifle or shotgun, with an overall length of less than 26 inches; machine guns and other automatic firearms; mufflers and silencers; and other firearms, except pistols and revolvers, "if such weapon is capable of being concealed on the person . . . ." 26 U. S. C. § 5848 (1); Treas. Reg. § 179.20, 26 CFR § 179.20. These limitations were apparently intended to guarantee that only weapons used principally by persons engaged in unlawful activities would be subjected to taxation.[4]

---

[2] Petitioner's plea of guilty did not, of course, waive his previous claim of the constitutional privilege. See, *e. g.*, *United States* v. *Ury*, 106 F. 2d 28.

[3] The section provides that "It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811, 5812 (b), 5813, 5814, 5844, or 5846, or which has at any time been made in violation of section 5821, or to possess any firearm which has not been registered as required by section 5841. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."

[4] The views of a subsequent Congress of course provide no controlling basis from which to infer the purposes of an earlier Congress. See *Rainwater* v. *United States*, 356 U. S. 590, 593; *United States* v. *Price*, 361 U. S. 304, 313. Nonetheless, it is pertinent to note that

Importers, manufacturers, and dealers in such firearms are obliged each year to pay special occupational taxes, and to register with the Secretary of the Treasury or his delegate. 26 U. S. C. §§ 5801, 5802. Separate taxes are imposed on the making and transfer of such firearms by persons other than those obliged to pay the occupational taxes. 26 U. S. C. §§ 5811, 5821. For purposes of these additional taxes, the acts of making and transferring firearms are broadly defined. Section 5821 thus imposes a tax on the making of a firearm "whether by manufacture, putting together, alteration, any combination thereof, or otherwise." Similarly, to transfer encompasses "to sell, assign, pledge, lease, loan, give away, or otherwise dispose of" a firearm. 26 U. S. C. § 5848 (10).

All these taxes are supplemented by comprehensive requirements calculated to assure their collection. Any individual who wishes to make a weapon, within the meaning of § 5821 (a), is obliged, "prior to such making," to declare his intention to the Secretary, and to provide to the Treasury his fingerprints and photograph. 26 U. S. C. § 5821 (e); Treas. Reg. § 179.78. The declaration must be "supported by a certificate of the local chief of police . . . or such other person whose certificate may . . . be acceptable . . . ." Treas. Reg. § 179.78. The certificate must indicate satisfaction that the fingerprints and photograph are those of the declarant, and that the firearm is intended "for lawful purposes." *Ibid.* Any person who wishes to transfer such a weapon may lawfully do so only

the Committee on Ways and Means of the House of Representatives, while reporting in 1959 on certain proposed amendments to the Act, stated that the "primary purpose of [the Firearms Act] was to make it more difficult for the gangster element to obtain certain types of weapons. The type of weapon with which these provisions are concerned are the types it was thought would be used primarily by the gangster-type element." H. R. Rep. No. 914, 86th Cong., 1st Sess., 2.

if he first obtains a written order from the prospective transferee on an "application form issued . . . for that purpose by the Secretary." 26 U. S. C. § 5814 (a). The application, supported by a certificate of the local chief of police, and accompanied by the transferee's fingerprints and photograph, must be approved by the Secretary prior to the transfer. Treas. Reg. §§ 179.98, 179.99. Finally, every person possessing such a firearm is obliged to register his possession with the Secretary, unless he made the weapon, or acquired it by transfer or importation, and the Act's requirements as to transfers, makings, and importations "were complied with." 26 U. S. C. § 5841.[5]

Failure to comply with any of the Act's requirements is made punishable by fines and imprisonment. 26 U. S. C. § 5861. In addition, § 5851 creates a series of supplementary offenses; it declares unlawful the possession of any firearm which has "at any time" been transferred or made in violation of the Act's provisions, or which "has not been registered as required by section 5841." Finally, § 5851 provides that in prosecutions conducted under that section "possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."

---

[5] The section provides that "Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with."

## II.

At the outset, it must be emphasized that the issue in this case is not whether Congress has authority under the Constitution to regulate the manufacture, transfer, or possession of firearms; nor is it whether Congress may tax activities which are, wholly or in part, unlawful. Rather, we are required to resolve only the narrow issue of whether enforcement of § 5851 against petitioner, despite his assertion of the privilege against self-incrimination, is constitutionally permissible. · The questions necessary for decision are two: first, whether petitioner's conviction under § 5851 is meaningfully distinguishable from a conviction under § 5841 for failure to register possession of a firearm; and second, if it is not, whether satisfaction of petitioner's obligation to register under § 5841 would have compelled him to provide information incriminating to himself. If, as petitioner urges, his conviction under § 5851 is essentially indistinguishable from a conviction premised directly upon a failure to register under § 5841, and if a prosecution under § 5841 would have punished petitioner for his failure to incriminate himself, it would follow that a proper claim of privilege should have provided a full defense to this prosecution.[6] To these questions we turn.

## III.

The first issue is whether the elements of the offense under § 5851 of possession of a firearm "which has not been registered as required by section 5841" differ in any significant respect from those of the offense under § 5841 of failure to register possession of a firearm. The United States contends that the two offenses, despite the sim-

---

[6] Indeed, so much is recognized by the Government; it has stated that "[w]e concede that if petitioner's reading of the two provisions were right . . . petitioner's conviction under Section 5851 would not be valid." Brief for the United States 8.

ilarity of their statutory descriptions, serve entirely different purposes, in that the registration clause of § 5851 is intended to punish acceptance of the possession of a firearm which, despite the requirements of § 5841, was never registered by any prior possessor, while § 5841 punishes only a present possessor who has failed to register the fact of his own possession. If this construction is correct, nothing in a prosecution under § 5851 would turn on whether the present possessor had elected to register; his offense would have been complete when he accepted possession of a firearm which no previous possessor had registered. We need not determine whether this construction would be free from constitutional difficulty under the Fifth Amendment, for we have concluded that § 5851 cannot properly be construed as the United States has urged.[7]

The United States finds support for its construction of § 5851 chiefly in the section's use of the past tense: the act stated to be unlawful is "to possess any firearm which *has not been* registered as required by section 5841." (Emphasis added.) It is contended that we may infer from this choice of tense that the failure to register must necessarily precede the accused's acquisition of possession. We cannot derive so much from so little. We perceive no more in the draftsman's choice of tense

---

[7] The Government's position is generally supported by several cases in the courts of appeals. See, in addition to the opinion below, *Frye* v. *United States,* 315 F. 2d 491; *Starks* v. *United States,* 316 F. 2d 45; *Mares* v. *United States,* 319 F. 2d 71; *Sipes* v. *United States,* 321 F. 2d 174; *Taylor* v. *United States,* 333 F. 2d 721; *Castellano* v. *United States,* 350 F. 2d 852; *Pruitt* v. *United States,* 364 F. 2d 826; *Decker* v. *United States,* 378 F. 2d 245. None of these cases, however, undertook an extended examination of the relationship between §§ 5851 and 5841. Compare *Lovelace* v. *United States,* 357 F. 2d 306, 309; and Mansfield, The Albertson Case: Conflict Between the Privilege Against Self-Incrimination and the Government's Need for Information, 1966 Sup. Ct. Rev. 103, 158–159, n. 95.

than the obvious fact that the failure to register must precede the moment at which the accused is charged; we find nothing which confines the clause's application to failures to register which have occurred before a present possessor received the firearm. It follows that the phrase fastened upon by the United States is, at the least, equally consistent with the construction advanced by petitioner.

If, however, nothing further were available, it might be incumbent upon us to accept the Government's construction in order to avoid the adjudication of a serious constitutional issue. See, *e. g.*, *Ashwander* v. *Valley Authority,* 297 U. S. 288, 348 (concurring opinion); *Crowell* v. *Benson,* 285 U. S. 22, 62. But there are persuasive indications at hand which, in our view, preclude adoption of the position urged by the United States. Initially, we must note that each of the other two offenses defined by § 5851 indicates very specifically that the violations of the making or transfer provisions, on which the § 5851 offenses are ultimately premised, can have occurred "at any time." An analogous phrase in the registration clause would have made plain beyond all question that the construction now urged by the United States should be accepted; if this was indeed Congress' purpose, it is difficult to see why it did not, as it did in the other clauses, insert the few additional words necessary to make clear its wishes. The position suggested by the United States would thus oblige us, at the outset, to assume that Congress has, in this one clause, chosen a remarkably oblique and unrevealing phrasing.

Similarly, it is pertinent to note that the transfer and making clauses of § 5851 punish the receipt, as well as the possession, of firearms; the registration clause, in contrast, punishes only possession. Under the construction given § 5851 by the United States, Congress might have been expected to declare unlawful, in addition, the receipt of

firearms never previously registered; indeed, the receipt of the firearm is, under that construction, the central element of the offense. Congress' preference in the registration clause for "possession," rather than "receipt," is satisfactorily explicable only if petitioner's construction of § 5851 is adopted.

Third, and more important, we find it significant that the offense defined by § 5851 is the possession of a firearm which has not been registered "as required by section 5841." In the absence of persuasive evidence to the contrary, the clause's final words suggest strongly that the perimeter of the offense which it creates is to be marked by the terms of the registration requirement imposed by § 5841. In turn, § 5841 indicates quite precisely that "[e]very person possessing a firearm" must, unless excused by the section's exception, register his possession with the Secretary or his delegate. Moreover, the Treasury regulations are entirely unequivocal; they specifically provide that "[e]very person in the United States possessing a firearm (a) not registered *to him,* ... must execute an application for the registration of such firearm ...." Treas. Reg. § 179.120. (Emphasis added.)

The pertinent legislative history offers additional assistance, and points against the Government's construction. The registration clause was inserted into § 5851 by the Excise Tax Technical Changes Act of 1958. 72 Stat. 1428. The two committee reports indicate, in identical terms,[8] that the existing section was thought inadequate because, although it defined as an unlawful act the possession of any firearm which had been made or transferred in violation of the Firearms Act, it failed "to so

---

[8] The language in the reports was evidently taken without change or elaboration from the recommendations submitted to the House Committee on Ways and Means by the Treasury. See Hearings before House Committee on Ways and Means on Excise Tax Technical and Administrative Problems, 84th Cong., 1st Sess., 185, 211.

94

define the possession of an unregistered firearm." H. R.
Rep. No. 481, 85th Cong., 1st Sess., 195; S. Rep. No. 2090,
85th Cong., 2d Sess., 212. The section as amended "specifically defines such possession of an unregistered firearm
as an unlawful act." *Ibid.* It is useful to note that the
committees did not suggest that the failure to register
must have preceded the acquisition of possession. Further, the reports indicate that the proposed amendment
was intended to make available in prosecutions for possession of an unregistered firearm the presumption
already contained in § 5851; they conclude that the
"primary purpose of this change is to simplify and clarify
the law and to aid in prosecution." H. R. Rep. No. 481,
*supra,* at 196; S. Rep. No. 2090, *supra,* at 212.

We infer that the amendment was thought to have
two purposes. First, it would complete the series of supplementary offenses created by § 5851, by adding to those
premised on a making or transfer one bottomed on a
failure to register. Second, it would facilitate the prosecution of failures to register by permitting the use of
the presumption included in § 5851. It would thus "aid
in prosecution" of conduct also made unlawful by § 5841.
Both these purposes are fully consistent with the construction of § 5851 urged by petitioner; but only the first
offers any support to the position suggested by the United
States.

We are unable to escape the conclusion that Congress
intended the registration clause of § 5851 to incorporate
the requirements of § 5841, by declaring unlawful the
possession of any firearm which has not been registered
by its possessor, in circumstances in which § 5841 imposes
an obligation to register. The elements of the offenses
created by the two sections are therefore identical. This
does not, however, fully resolve the question of whether
any hazards of incrimination which stem from the regis-

tration requirement imposed by § 5841 must be understood also to inhere in prosecutions under § 5851. Two additional distinctions between the offenses have been suggested, and we must examine them.

First, it has been said that the offenses differ in emphasis, in that § 5851 chiefly punishes possession, while § 5841 punishes a failure to register. Cf. *Frye* v. *United States,* 315 F. 2d 491, 494; *Castellano* v. *United States,* 350 F. 2d 852, 854. We find this supposed distinction entirely unpersuasive, for, as we have found, the possession of a firearm and a failure to register are equally fundamental ingredients of both offenses. Second, it has been suggested that § 5841 creates a "status of unlawful possession" which, if assumed by an individual, denies to him the protection of the constitutional privilege. *Castellano* v. *United States, supra,* at 854. It has evidently been thought to follow that the privilege may be claimed in prosecutions under § 5841, but not in those under § 5851. This is no less unpersuasive; for reasons discussed in *Marchetti* v. *United States,* decided today, *ante,* at 51–52, we decline to hold that the performance of an unlawful act, even if there exists a statutory condition that its commission constitutes a waiver of the constitutional privilege, suffices to deprive an accused of the privilege's protection. We hold that petitioner's conviction under the registration clause of § 5851 is not properly distinguishable from a conviction under § 5841 for failure to register, and that both offenses must be deemed subject to any constitutional deficiencies arising under the Fifth Amendment from the obligation to register.

## IV.

We must now consider whether, as petitioner contends, satisfaction of his obligation to register would have compelled him to provide information incriminating to him-

self.[9]  We must first mark the terms of the registration requirement.  The obligation to register is conditioned simply upon possession of a firearm, within the meaning of § 5848 (1).  Not every possessor of a firearm must, however, register; one who made the firearm, or acquired it by transfer or importation, need not register if the Act's provisions as to transfers, makings, and importations "were complied with."  If those requirements were not met, or if the possessor did not make the firearm, and did not acquire it by transfer or importation, he must furnish the Secretary of the Treasury with his name, address, the place where the firearm is usually kept, and the place of his business or employment.  Further, he must indicate his date of birth, social security number, and whether he has ever been convicted of a felony. Finally, he must provide a full description of the firearm.  See 26 U. S. C. § 5841; Treas. Reg. § 179.120; Internal Revenue Service Form 1 (Firearms).

The registration requirement is thus directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who therefore are immediately threatened by criminal prosecutions under §§ 5851 and 5861.  They are unmistakably persons "inherently suspect of criminal activities."  *Albertson* v. *SACB,* 382 U. S. 70, 79.  It is true, as the United States emphasizes, that registration is not invariably indicative of a violation of the Act's requirements; there are situations, which the United States itself styles "uncommon," [10] in which a possessor

---

[9] We note that § 5841 has several times been held to require incriminating disclosures, in violation of the Fifth Amendment privilege against self-incrimination.  See *Russell* v. *United States,* 306 F. 2d 402; *Dugan* v. *United States,* 341 F. 2d 85; *McCann* v. *United States,* 217 F. Supp. 751; *United States* v. *Fleish,* 227 F. Supp. 967.  See also *Lovelace* v. *United States, supra,* at 309.

[10] In particular, the United States emphasizes the position of a finder of a lost or abandoned firearm.  Brief for the United States 20.

who has not violated the Act's other provisions is obliged to register.[11]  Nonetheless, the correlation between obligations to register and violations can only be regarded as exceedingly high, and a prospective registrant realistically can expect that registration will substantially increase the likelihood of his prosecution.  Moreover, he can reasonably fear that the possession established by his registration will facilitate his prosecution under the making and transfer clauses of § 5851.  In these circumstances, it can scarcely be said that the risks of criminal prosecution confronted by prospective registrants are "remote possibilities out of the ordinary course of law," *Heike* v. *United States,* 227 U. S. 131, 144; yet they are compelled, on pain of criminal prosecution, to provide to the Secretary both a formal acknowledgment of their possession of firearms, and supplementary information likely to facilitate their arrest and eventual conviction. The hazards of incrimination created by the registration requirement can thus only be termed "real and appreciable." *Reg.* v. *Boyes,* 1 B. & S. 311, 330; *Brown* v. *Walker,* 161 U. S. 591, 599–600.

We are, however, urged by the United States, for various disparate reasons, to affirm petitioner's convic-

---

[11] We must note, however, that certain of these prospective registrants might be threatened by prosecution under state law for possession of firearms, or similar offenses. It is possible that such persons would be obliged, if they registered in compliance with § 5841, to provide information incriminating to themselves. Such hazards would, of course, support a proper claim of privilege. See *Malloy* v. *Hogan,* 378 U. S. 1.  For illustrations of state statutes under which such prosecutions might occur, see Conn. Gen. Stat. Rev. § 53–202 (1958); Del. Code Ann., Tit. 11, § 465 (1953); Hawaii Rev. Laws § 157–8 (1955); Iowa Code § 696.1 (1966); Kan. Stat. Ann. § 21–2601 (1964); La. Rev. Stat. § 40:1752 (1950); Minn. Stat. § 609.67 (1965); N. J. Rev. Stat., Tit. 2A, § 151–50 (1953). We have discovered no state statute under which the present petitioner might have been subject to prosecution for acts registrable under § 5841, and he has not contended that registration would have incriminated him under state law.

tion. It is first suggested that the registration requirement is a valid exercise of the taxing powers, in that it is calculated merely to assure notice to the Treasury of all taxable firearms. We do not doubt, as we have repeatedly indicated,[12] that this Court must give deference to Congress' taxing powers, and to measures reasonably incidental to their exercise; but we are no less obliged to heed the limitations placed upon those powers by the Constitution's other commands. We are fully cognizant of the Treasury's need for accurate and timely information, but other methods, entirely consistent with constitutional limitations, exist by which such information may be obtained. See generally *Counselman* v. *Hitchcock,* 142 U. S. 547, 585. See also *Adams* v. *Maryland,* 347 U. S. 179; *Murphy* v. *Waterfront Commission,* 378 U. S. 52. Accordingly, nothing we do today will prevent the effective regulation or taxation by Congress of firearms.

Nonetheless, these statutory provisions, as now written, cannot be brought within any of the situations in which the Court has held that the constitutional privilege does not prevent the use by the United States of information obtained in connection with regulatory programs of general application. See *United States* v. *Sullivan,* 274 U. S. 259; *Shapiro* v. *United States,* 335 U. S. 1. For reasons given in *Marchetti* v. *United States, supra,* and *Grosso* v. *United States, ante,* p. 62, we have concluded that the points of significant dissimilarity between these circumstances and those in *Shapiro* and *Sullivan* preclude any proper application of those cases here. The questions propounded by § 5841, like those at issue in *Albertson, supra,* are "directed at a highly selective group inherently suspect of criminal activities"; they concern,

---

[12] See, for example, *Sonzinsky* v. *United States,* 300 U. S. 506; *Marchetti* v. *United States, supra.*

not "an essentially non-criminal and regulatory area of inquiry," but "an area permeated with criminal statutes." 382 U. S., at 79. There are, moreover, no records or other documents here to which any "public aspects" might reasonably be said to have attached. Compare *Shapiro* v. *United States, supra,* at 34; and *Marchetti* v. *United States, supra.*

The United States next emphasizes that petitioner has consistently contended that §§ 5841 and 5851 are unconstitutional on their face; it urges that this contention is foreclosed by the inclusion in the registration requirement of situations in which the obligation to register cannot produce incriminating disclosures. We recognize that there are a number of apparently uncommon circumstances in which registration is required of one who has not violated the Firearms Act; the United States points chiefly to the situation of a finder of a lost or abandoned firearm.[13] Compare *United States* v. *Forgett,* 349 F. 2d 601. We agree that the existence of such situations makes it inappropriate, in the absence of evidence that the exercise of protected rights would otherwise be hampered, to declare these sections impermissible on their face. Instead, it appears, from the evidence now before us, that the rights of those subject to the Act will be fully protected if a proper claim of privilege is understood to provide a full defense to any prosecution either for failure to register under § 5841 or, under § 5851, for possession of a firearm which has not been registered.

Finally, we are asked to avoid the constitutional difficulties which we have found in §§ 5841 and 5851 by imposing restrictions upon the use by state and federal authorities of information obtained as a consequence of the registration requirement. We note that the provi-

---

[13] Again, we note that these registrants might be confronted by hazards of prosecution under state law, and that those hazards might support a proper claim of privilege. See *supra,* n. 11.

sions of 26 U. S. C. § 6107 [14] are applicable to the special occupational taxes imposed by § 5801, although not, apparently, to the making and transfer taxes imposed by §§ 5811 and 5821. In these circumstances, we decline, for reasons indicated in *Marchetti, supra,* and *Grosso, supra,* to impose the restrictions urged by the United States.

We hold that a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5851.

## V.

It remains only to determine the appropriate disposition of this case. Petitioner has seasonably and consistently asserted a claim of privilege, but the courts below, believing the privilege inapplicable to prosecutions under § 5851, evidently did not assess the claim's merits. It would therefore ordinarily be necessary to remand the cause to the District Court, with instructions to examine the merits of the claim. We note, however, that there can be no suggestion here that petitioner has waived his privilege, and that, moreover, the United States has conceded that petitioner's privilege against

---

[14] Section 6107 provides that "In the principal internal revenue office in each internal revenue district there shall be kept, for public inspection, an alphabetical list of the names of all persons who have paid special taxes under subtitle D or E within such district. Such list shall be prepared and kept pursuant to regulations prescribed by the Secretary or his delegate, and shall contain the time, place, and business for which such special taxes have been paid, and upon application of any prosecuting officer of any State, county, or municipality there shall be furnished to him a certified copy thereof, as of a public record, for which a fee of $1 for each 100 words or fraction thereof in the copy or copies so requested may be charged." The special taxes to which the section refers include those imposed by 26 U. S. C. § 5801.

self-incrimination must be found to have been impermissibly infringed if his contentions as to the proper construction of §§ 5851 and 5841 are accepted. Brief for the United States 8. Accordingly, the District Court would be obliged in any additional proceeding to conclude that "there is reasonable ground to apprehend danger to the witness from his being compelled to answer." *Reg.* v. *Boyes, supra,* at 330. It follows that any proceeding in the District Court must inevitably result in the reversal of petitioner's conviction. We have plenary authority under 28 U. S. C. § 2106 to make such disposition of the case "as may be just under the circumstances." See *Yates* v. *United States,* 354 U. S. 298, 327–331; *Grosso* v. *United States, supra.* It would be neither just nor appropriate to require the parties and the District Court to commence an entirely needless additional proceeding. Accordingly, the judgment of the Court of Appeals is

*Reversed.*


MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARREN, dissenting.

For reasons stated in my dissent in *Marchetti* v. *United States* and *Grosso* v. *United States, ante,* p. 77, I cannot agree with the result reached by the Court in this case.