John C. **BENNETT**, Plaintiff,

v.

**Wilbur J. COHEN**, Secretary of Health, Education and Welfare, Defendant.

No. 2339.

United States District Court
W. D. North Carolina,
Charlotte Division.

March 6, 1969.

---

3.   General Telephone Co. of Southwest v. Robinson, supra, 132 F.Supp. at 46.

No appearance for plaintiff.

William Medford, U. S. Atty., Asheville, N. C., Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., for defendant.

McMILLAN, District Judge.

John C. Bennett filed claim on November 18, 1966 for Social Security benefits; the Hearing Examiner and the Appeals Council denied benefits; Bennett filed suit asking review of the decision and allowance of benefits under the Act.

The Social Security Act provides disability benefits for an insured individual who has "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months * * *" (42 U.S.C.A. § 423(d) (1) (A).). 42 U.S.C.A. § 423(d) (3), provides that " 'Physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The original application described the alleged disability as a "back injury." In the evidence, however, it became apparent that the claim includes both physical and mental components.

The claimant is an accountant with a bookkeeping business which over the past several years has provided an income varying from above $4,800 in 1960 to $3,290.77 in 1966. He estimated about $2,000 for 1967.

The physical disability portion of the claim does not present too great a problem. The claimant contends he has ar-

thritis throughout his back, shoulders, knees and elbows. He has had signs of bladder and prostate difficulties and perhaps at one time a specific injury to his low back. He was treated from 1955 to 1966 by Dr. Julian E. Jacobs for a number of muscle and joint pains and injuries involving the low back, the left elbow, the right shoulder and the right elbow. During World War II while working in Panama he says he sustained skull fractures in a street fight. Listed injuries include a fall from a fishing dock in 1965, a sprained right shoulder from lifting a heavy weight and a bruise on the back. Dr. Julian E. Jacobs on October 27, 1966 observed that the patient had been disabled from doing any regular work since his accident of October, 1965. (However, Dr. Jacobs had noted on October 26, 1965, two weeks after the accident, and also on January 4, 1966, that he saw no reason why the patient could not work.)

Dr. C. O. Chrysler reported on September 17, 1966 generally negative physical findings, including normal reflexes, normal heart and lungs, some high blood pressure and a low back strain. There was a small amount of muscle spasm and some arthritic spurring in the right sacroiliac joint. There were reports of a urinary infection and a diabetic process; however, these were not thought by Dr. Chrysler to be disabling.

Dr. F. Wayne Lee, orthopedic surgeon, based on a January, 1967 examination, found low grade arthritis but no acute inflammation in the sacroiliac joint, and made no finding of actual physical disability.

Dr. J. S. Gaul in February, 1967 made detailed findings with a conclusion that there was no evidence of physical disability from an orthopedic standpoint, although there was present some minimum arthritic spurring.

■ The gist of the the medical evidence is that despite the presence of a number of ailments more or less typical of middle-aged existence, the plaintiff has no *physical* condition which would prevent him from being an accountant. In fact, his physical activity at age 58 is considerably greater than normal attention to the job of being an accountant would require. He gets up at 6:30 a. m.; cooks breakfast; drives down for the mail; spends three hours a day in correspondence; does some accounting work; cooks supper; does the washing; makes the beds (four of them); cleans the house; does some sweeping; and occasionally plays the trombone in two different bands. It would be difficult to say that a man able to carry on the activity he carries on is *physically* unable to keep books or to do any one of a number of reasonably active jobs. The Hearing Examiner's finding that there is no *physical* impairment to prevent him from engaging in substantial gainful activity is certainly supported by substantial evidence, and is affirmed.

When we come to the "mental impairment" side of the case we find a different picture. The plaintiff appears to consider himself at war with constituted authority. According to him he has been persecuted by the "Bar Association" and by lawyers for many years. He was unjustly jailed in Charlotte some years ago, he says, and was unable to get vindication because the judge was mentally callous but physically "rubber armed" and would not enter a remedial order as requested by the plaintiff. He has a keen an intelligent interest in questions of constitutional law. He is suspicious of courts, thinks courts and lawyers are subject to bribery, and is at bay against the combined onslaughts of lawyers, creditors, state authorities, federal authorities, tax authorities, doctors, and all the "thousand jolts and shocks the flesh is heir to." He has been deprived of his constitutional rights because Gideon v. Wainwright was not applied to provide him counsel to take to the Supreme Court a controversy over whether he should or should not have been jailed for sixteen days for a petty matter. The list of his injustices fills many pages of letters

to the Social Security Administration and is the subject of many comments in the medical reports. Worry over his controversies keeps him physically sick.

The doctors made note of his mental problems. Dr. Ullman, a psychologist, after extensive tests, observed that the claimant has superior intelligence, a condition of paranoia, and mental power adequate to practice his profession but that he is socially inefficient because of devoting so much of his time and efforts to combatting his "persecutors" that he has no time or strength for remunerative work. Dr. Ullman reported that he needs constant supervision and direction for his own safety and protection and for the protection of society. Dr. D. E. McDonald diagnosed a basically paranoid situation of long duration though not actively psychotic, and felt he was competent to manage his affairs though preoccupied with litigation. Dr. H. F. Adickes felt that he had a paranoid personality, not psychotic but potentially so, and that no known psychiatric treatment would be likely to help. Dr. Lee felt that his mental condition was not compatible with working as a certified public accountant. Dr. Fox, a psychiatrist, concluded his lengthy report by observing that the claimant suffers from a paranoid personality disorder and that he is likely to continue his course of stirring up trouble. Dr. Fox felt he was mentally able to practice his profession, but was socially inefficient, and had no treatment to recommend.

The evidence of mental and psychological impairment would support a finding either that the plaintiff is disabled or that he is not disabled to pursue substantial gainful activity. However, the examiner has expressly declined to make any findings about the extent or the economic effects of the mental condition. In his report he said, "The Hearing Examiner has no intention of attempting a diagnosis in this complex case." He stated that the Social Security regulations are controlling, and that the claimant's earnings of above $125 a month

demonstrate the claimant's ability to engage in substantial gainful activity and that there is no evidence to the contrary. The examiner said, "The Hearing Examiner finds that the claimant's 1966 and 1967 earnings from his business do constitute substantial gainful activity as that term is defined in § 404.1534(b) of Social Security Regulations No. 4. He therefore has no alternative but to find the claimant is not suffering from an impairment or combination of impairments of such severity as to preclude him from engaging in such substantial gainful activity."

The Appeals Council affirmed the conclusions of the hearing examiner without modifying any of the bases for decision.

In Hanes v. Celebrezze, 337 F.2d 209 (4th Cir., 1964), and Leftwich v. Gardner, 377 F.2d 287 (4th Cir., 1967), the Court of Appeals for the Fourth Circuit made it clear that the existence of earnings is not the only answer nor the end to inquiry as to the existence of disability under the Act. At the time the decisions of the Department of Health, Education and Welfare were made they were clearly made under an erroneous apprehension of law. Facts found under a misapprehension of law should not be affirmed.

The question, however, is whether the 1968 amendments to the Social Security Act changed the law applicable to this case. In January, 1968, while this claim was pending and before this suit was filed, Congress passed a law applicable to this and similar cases which in pertinent part (42 U.S.C.A. § 423(d) (4)) reads as follows:

"The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or

earnings meet such criteria shall, except for purposes of section 422(c) of this title, be found not to be disabled."

A question might arise whether this statute does or does not constitute an unconstitutional delegation of authority to the Secretary to establish criteria for disability. It is not necessary to deal with that question for two reasons.

■ In the first place, it is possible to put a clearly constitutional interpretation upon the statute by reading into it the requirements that the criteria for determining disability remain governed by the "substantial evidence" requirement of the Act, 42 U.S.C.A. § 405(g). A constitutional (in this case a restrictive) interpretation of the statute should be preferred over an unconstitutional interpretation. Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

■ In the second place, the Secretary by his own regulation has recognized the constitutional limitations upon his authority and has recognized that a limiting construction must in fact be placed upon the broad grant of power of 42 U.S.C.A. § 423(d) (4). He has done this in the text of the regulation itself which reads:

"An individual's earnings from work activities averaging in excess of $125 (formerly $100) a month shall be deemed to demonstrate his ability to engage in substantial gainful activity *in the absence of evidence to the contrary.*" (Emphasis added.)

The Secretary of Health, Education and Welfare has thus recognized that no arbitrary dollar standard for denying benefits is valid unless it bears a reasonable relation to economic reality. The $125 a month level can reasonably be said to bear such reasonable relation to economic reality.

More importantly, however, the Secretary by the regulation has said that earnings above $125 a month only demonstrate ability to engage in substantial gainful activity "in the absence of evidence to the contrary."

■ The existence of earnings of $125 is therefore not a conclusive rule, but simply an obstacle that the plaintiff must overcome by "evidence to the contrary."

The hearing examiner and the Appeals Council have considered themselves bound by the earnings and have therefore overlooked the existence of quite substantial evidence of disability of a mental type in the form of the testimony of Dr. Ullman, Dr. Lee and the plaintiff himself, and in the form of inferences from comments of other doctors. When the hearing examiner confessed to "no intention of attempting a diagnosis in this complex case," he confessed that in light of the earnings, he really did not think he had a duty to consider whether there was "evidence to the contrary."

It follows, I believe, that this case ought to be reconsidered by the hearing examiner and the Appeals Council in light of the principles outlined above.

It is, therefore, ordered, that the decision and order of the Appeals Council and the hearing examiner on the issue of disability of a mental nature be, and they are set aside; that this cause be remanded for further consideration in light of the principles outlined above, particularly including the issue whether there is evidence to rebut the effect of earnings, and particularly what findings should be made based upon such evidence; that specific findings of fact should be made with regard to the nature and extent of the mental or psychological disability, if any, which the plaintiff has; the effect, if any, of such disability upon the plaintiff's earning capacity; the probability, if any, of improvement or elimination of this disability; and its probable duration. The findings should further cover the problem of availability of other employment; the capacity of the plaintiff to participate in other gainful employment; and whether his accounting work constitutes substantial gainful activity.