Edward M. HELIGMAN, Appellant,
v.
UNITED STATES of America,
Appellee.
No. 19288.

United States Court of Appeals
Eighth Circuit.
March 5, 1969.

Rehearing Denied March 27, 1969.
Certiorari Denied June 23, 1969.
See 89 S.Ct. 2129.

Irl B. Baris, of Newmark & Baris, St. Louis, Mo., for appellant.

King M. Trimble, Asst. U. S. Atty., St. Louis, Mo., for appellee, Veryl L. Riddle, U. S. Atty., St. Louis, Mo., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

**FLOYD R. GIBSON, Circuit Judge.**

The defendant Edward M. Heligman was convicted of violating 26 U.S.C. § 7203, which requires, in addition to other obligations, the making (and filing) of income tax returns.[1] This section requires all corporations to file a corporate income tax return; and under 26 U.S.C. § 6062 a corporate return "shall be signed by the president, vice-president, treasurer, assistant treasurer, chief accounting officer or any other officer duly authorized so to act."

Defendant was president of the E & H Leasing Company and as president failed to file or cause to be filed corporate income tax returns for the calendar years 1961 and 1962. He was sentenced to one year on each count, the terms to run concurrently.

The facts constituting the offense were admitted and stipulated by the defendant in the trial to the Court.[2] Defendant's only defense was a Fifth Amendment claim that he should not have been called upon to make or file corporate returns since by so doing he might have incriminated himself with respect to potential or pending criminal charges of Interstate Commerce Act violations.

The factual basis for Heligman's Fifth Amendment claim is that on December 4, 1962 a criminal information was filed against him, charging him with 65 violations of the Interstate Commerce Act, committed between October 3, 1960 and April 13, 1962. Pertinent elements of

---

1. Section 7203 in pertinent part states:
   "Any person * * * required by this title or by regulations made under authority thereof to make a return * * *, who willfully fails to * * * make such return, * * * at the time or times required by law or regulations, shall * * * be guilty of a misdemeanor * * *."

2. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

each violation were that Heligman knew the corporation was violating the law and that he knowingly aided the illegal activity. These charges apparently arose out of the operation of related corporations and not the E & H Leasing Company. No charges were filed against the E & H Leasing Company, but Heligman was under investigation.

The legal basis for the Fifth Amendment claim is that the Supreme Court's interpretation of the Fifth Amendment [3] privilege against incrimination in Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L. Ed.2d 165 (1965), and in the trilogy of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 716, 19 L.Ed.2d 906 (1968) and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) is broad enough to excuse defendant from the statutory obligation to file the corporate income tax returns of E & H Leasing Company of which he was president, where by so doing, he might have incriminated himself.

Defendant claims that to have signed the corporate income tax return, in his capacity as corporation president, for the calendar year 1961, while he was violating the law, and to have similarly signed the corporate income tax return for the calendar year 1962, while criminal charges were outstanding against him, (he pleaded guilty to 30 counts of the information on March 18, 1963) would clearly have incriminated him in that it would have supplied proof of his corporate position and by inference would have supplied proof of his knowledge of the unlawful operations of the E & H Leasing Company or related corporations. Defendant, therefore, maintains that with his and the defendant corporation's and related corporations' background of Interstate Commerce violations he had reasonable cause to apprehend danger from the filing of the cor-

porate tax returns, and such filing would have furnished a link in the chain of evidence needed to prosecute him for a federal crime. The defendant does not pinpoint specific inquiries or answers in the corporate return that would be incriminatory but asserts that signing the corporate tax return as president would reveal the fact that he was president of the corporation and as president would know that the corporation was violating the law and that he knowingly and willfully aided and abetted the corporate offense.

The Government considers the matter controlled by United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), where a unanimous court in an opinion by Mr. Justice Holmes held that the income tax law applies to illegal gains and that the Fifth Amendment protection does not protect the recipient of illegal gains from prosecution for willful failure to make a return. That Court further held at 263, 47 S. Ct. at 607 that if the return called "for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all."

◼ The rationale declared in *Sullivan* was followed by us in Daly v. United States, 393 F.2d 873 (1968), where we held that a taxpayer was not entitled to a blanket Fifth Amendment objection to an inquiry and interrogation by the Internal Revenue Service, and that the taxpayer, "cannot assert the privilege to every question asked by the examiner, most of which are innocuous on their face." We thus left open the question as indicated in *Sullivan* of whether there might be specific questions in the return, or as in *Daly* in the interrogation, the answers to which might be privileged. But the taxpayer is not the final arbiter of the privilege. The privilege must be specifically claimed on a par-

3. The Fifth Amendment to the United States Constitution in part states:

"No person * * * shall be compelled in any criminal case to be a witness against himself."

ticular question and the matter submitted to the court for its determination as to the validity of the claim.

The defendant here, however, claims a blanket privilege against the mere making or filing of the return. The cases relied on by defendant have held filing or registration statutes invalid that require an individual to disclose a certain status (as a gambler) or a criminal act (illegal possession of firearms or membership in a subversive organization) that would leave him exposed to either a federal or state prosecution.

In *Albertson* the Court held the Subversive Activities Control Act of 1950, 50 U.S.C. § 786, unconstitutional in requiring registration of the Communist party as an organization and of its members as individuals because the registration was inherently incriminatory since the admission of Communist party membership or affiliation "might be used as evidence in or at least supply investigatory leads to a criminal prosecution." (at 78, 86 S.Ct. at 198) under various other anti-subversion statutes. The Court distinguished *Sullivan* by viewing the questions in the income tax return as neutral on their face and directed at the public at large, whereas the registration of subversive organizations was directed at a "highly selective group inherently suspect of criminal activities." (at 79, 86 S.Ct. at 199). In *Marchetti* and *Grosso* the Court held the Fifth Amendment privilege against self-incrimination barred an individual's prosecution for violating the federal wagering tax statutes, 26 U.S.C. §§ 4411 and 4412, on the ground "that the obligations to register and to pay the occupational tax created for petitioner 'real and appreciable,' and not merely 'imaginary and unsubstantial,' hazards of self-incrimination." at 48 of 390 U.S. at 702 of 88 S.Ct. The Court further held in *Marchetti* that the "required records" doctrine of Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) could not be utilized to preclude assertion of the constitutional privilege and that *Shapiro* was inapplicable.

In *Haynes*, the Court held the Fifth Amendment privilege against incrimination applicable in defending a charge of possessing an unregistered firearm, holding the interrelated statutory system for the taxation of certain firearms was "apparently intended to guarantee that only weapons used principally by persons engaged in unlawful activities would be subjected to taxation." (at 87 of 390 U.S., at 725 of 88 S.Ct.); that "the registration clause of [Title 26 U.S.C.] § 5851 is not properly distinguishable from a conviction under § 5841 for failure to register, and that both offenses must be deemed subject to any constitutional deficiencies arising under the Fifth Amendment from the obligation to register." (at 95, 88 S.Ct. at 729); that the registration would be self-incriminatory; and that the registration requirement is directed principally at persons, as noted in *Albertson*, " 'inherently suspect of criminal activities.' " (at 96, 88 S.Ct. at 730).

The defendant distinguishes *Sullivan* by pointing out that in *Sullivan* the tax was imposed upon the taxpayer defendant, whereas here any tax due was a corporate obligation and not a personal one of the defendant. He views his obligation to file the corporate tax return the same as a "registration" in the *Albertson* case. We are not impressed by this argument.

The defendant, as a corporation president, had a statutory obligation to either file or cause to be filed a proper corporate tax return. The affirmative requirements of § 7203 are directed to all taxpayers, corporate and individual, who are subject to filing a return under the tax laws. It is neutral in its application and is not directed against a group "inherently suspect of criminal activities." Corporation presidents and the other corporate officers mentioned in § 6062 are not an inherently suspect group.

It belabors the obvious to point out that the purpose of the tax laws is to raise public funds, that adequate operation of taxing procedures is vital to

the well-being of this country, and that the basic purpose of the tax laws is not to punish extraneous crimes but to assess and collect revenue. Offenses for violations of the tax laws are, of course, set up as a necessary enforcement measure. Our income tax system is to a large extent predicated upon the voluntary disclosure of taxable income. The operation of this system is of crucial concern to the nation. The public need for requiring voluntary disclosures of income transcends any personal right to thwart national objectives by allowing an undisclosed self-determination of possible incrimination, thus excusing compliance with the income tax laws. We, therefore, hold that the Fifth Amendment privilege against incrimination does not extend to defendant's failure to file or cause to be filed the corporate tax returns of E & H Leasing Company.

■ Furthermore, the defendant was not privileged to refuse the production of corporate records nor could he withhold any incriminatory corporate records. These are not personal records and the government has a right to view corporate records for legitimate investigative purposes. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L. Ed. 771 (1911) long ago held that the president of a corporation could not refuse to produce corporate records on the ground that they would incriminate him, stating at 384, 31 S.Ct. at 546.

"If the corporation were guilty of misconduct, he could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of their disclosures."

Later the Supreme Court of the United States in United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) held an officer of a labor union could not refuse to produce union records under a Fifth Amendment claim against self-incrimination, the Court reasoning at 699, 64 S.Ct. at 1251.

"But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination."

■ There is another aspect of defendant's claim which should be mentioned. While we are of the opinion that the Fifth Amendment claim against self-incrimination is not available to the defendant under the facts of this case, it is difficult for us to perceive how the defendant can seriously advance his claim when he could easily have had some other corporate officer sign the return and file it so that actually he was not confronted by any substantial and real hazard of compelled incrimination. See *Marchetti* at p. 53, 88 S.Ct. 697. Also the information of his position as president of the E & H Leasing Company was readily available to the Government through the office of the Secretary of State of Missouri, who must by law keep a public record of the officers of Missouri corporations. V.A. M.S. § 351.120. Also there are probably many other sources where this information would be available such as occupational licenses and other business reports and filings. In fact defendant admitted in oral argument that the Government knew, at the times under consideration, that he was president of E & H Leasing Company.

We fail to see any substance to the argument that defendant feared self-incrimination by disclosing his corporate position on a tax return when the Government already knew him to be, or had access to public records showing him to be, president of E & H Leasing Company.

Judgment of the District Court is affirmed.