**Application of Leo NADELSON and George WASSERMAN, Petitioners,**

**To Quash the Supoenas Issued by the United States District Court, Southern District, by the United States Attorney for the Southern District.**

**No. M–8–25.**

United States District Court, S. D. New York, Criminal Division.

Feb. 1, 1973.

David Goldstein, New York City, for petitioners.

Whitney North Seymour, Jr., U. S. Atty. for the S.D.N.Y., by Patricia M. Hynes, Asst. U. S. Atty., New York City, of counsel, for the United States.

**MEMORANDUM AND ORDER DENYING PETITION TO QUASH GRAND JURY SUBPOENA**

WHITMAN KNAPP, District Judge:

*Petitioners seek an order to quash a grand jury subpoena duces tecum calling upon them to produce the following records:*

"All records relating to service of process required to be kept by Lee

Nadelson [George Wasserman] pursuant to New York City Department of Consumer Affairs Rules and Regulations relating to process servers from April 1, 1970 to the present."

■ Petitioners seek that the subpoena be quashed on two grounds:

1. It is unreasonably broad, and
2. Compelling the petitioners to respond to the subpoena would violate their Fifth Amendment rights.

The first ground is specious and need not further be considered.

■ In support of their second ground, petitioners rely primarily on Marchetti v. United States (1968) 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States (1968) 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906; Haynes v. United States (1968) 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923; and Leary v. United States (1969) 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. The Government, on the other hand, cites United States v. Silverman (2d Cir. 1971) 449 F.2d 1341; and Shapiro v. United States (1948) 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787.

I find that although *Silverman* seems distinguishable, *Shapiro* clearly supports the Government's position; and that the cases relied upon by the petitioners are not apposite.

The *Silverman* case involved obtaining from the Judicial Conference of the State of New York, in support of an income tax prosecution, copies of contingent retainer agreements filed with it by an attorney pursuant to regulations promulgated by the Appellate Division of the New York Supreme Court. In holding that the records were properly usable in a Federal prosecution, both the District Court and the Court of Appeals observed that no Fifth Amendment problem was presented because, at the time the records were filed, no crime had been committed by anyone, and no crime need ever have been committed if the lawyers filing the records had subsequently paid appropriate taxes. Thus, the Court of Appeals observed (449 F.2d at 1345):

"The documents involved here have no relevance to the revelation of criminal conduct. At the time they were filed they did not incriminate; they became harmful only after the filing of tax returns that failed to report certain income."

Here, the situation is quite different. The regulation of the Department of Consumer Affairs requires the making of records concerning legal papers which *have already* been served. Accordingly, if the petitioners had in fact been engaging in the practice of "sewer service", the creation by them of records pursuant to departmental regulations would have constituted the creation of evidence of their own crime.

However, precisely the same thing can be said of the records involved in *Shapiro*. That case involved OPA price regulations, and the records produced pursuant to departmental direction constituted (if the record keepers had in fact engaged in criminal conduct) contemporaneous records of crimes that had actually been committed by them. In concluding that the OPA's grant of immunity was not triggered by the production of such records, the Supreme Court necessarily held that they were entitled to no Fifth Amendment privilege. The basis of the Court's holding was that the Government had a right, in the public interest, to require a keeping of the records, which requirement carried with it an obligation to disclose the records to public authority upon appropriate demand. I can see no basis for concluding that the regulation of the service of process in state courts is any less a matter of public concern than governmental price control.

The cases upon which petitioner relies are inapposite because all of them deal with statutes or regulations primarily designed for the purpose of altogether preventing certain conduct which had been predetermined to be unlawful. By way of illustration, in *Haynes*, Mr. Justice Harlan observed that the Fifth Amendment claim was not obviated merely because the registration requirement

included a few "apparently uncommon circumstances" where registration would not necessarily disclose the commission of a crime (390 U.S. at 99, 88 S.Ct. 722; see also *Leary*, 395 U.S. at 13, 89 S.Ct. 1532).

In brief, the question whether a given situation falls under *Shapiro* or under the cases upon which petitioners rely turns on whether the regulation invoked was designed for the purpose of regulating lawful activity in the public interest or was designed as an indirect means of suppressing unlawful activity. The instant regulation is clearly within the former category, and the government is accordingly entitled to the production of the records.

Petitioners' additional contention, that the Department regulation purports only to apply the sanction of license revocation for noncompliance, is without merit. § B32–457.0 thereof plainly contemplates criminal sanctions for violation of the regulations.

The petition is in all respects denied. So ordered.