UNITED STATES of America

v.

**William E. DODGE and Edmund S. Borkoski, Defendants.**

**Crim. No. 3:94CR00018 (TFGD).**

United States District Court,
D. Connecticut.

April 25, 1994.

---

Christopher F. Droney, U.S. Atty., Anthony E. Kaplan, Asst. U.S. Atty., New Haven, CT, for plaintiff.

Thomas G. Dennis, Chief Federal Public Defender, Hartford, CT, John D. Maxwell, Hartford, CT, for defendants.

## RULING ON MOTIONS TO SUPPRESS

DALY, District Judge.

Defendant William E. Dodge ("Dodge") moves to suppress any evidence concerning oral statements and testimonial acts made by him after his arrest on January 21, 1994,[1] and to suppress all items of tangible property seized from his residence on the day of his arrest. Following an evidentiary hearing, and for the reasons stated below, the defendant's motion to suppress statements is denied in its entirety, while the motion to suppress tangible evidence is denied without prejudice.

### FACTS

On January 21, 1994, Magistrate Judge Margolis issued an arrest warrant for the defendant based on a complaint charging him with conspiracy to receive and possess an unregistered silencer in violation of 18 U.S.C. § 371. Magistrate Judge Margolis also issued a search warrant for Dodge's home at 65 Terryville Avenue, Unit 1, Bristol, Connecticut. The search warrant authorized the seizure of certain items of property detailed

---

1. Dodge first filed a Motion to Suppress Statements on March 1, 1994. Dodge filed an Amended Motion to Suppress on April 7, 1994, and consequently the original motion is denied as superseded.

in an attached list.[2] Both the arrest warrant and the search warrant were based upon an affidavit executed by Special Agent Brian A. Glynn ("Glynn") of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). The arrest and search warrants were executed on January 21, 1994.

Dodge now moves to suppress as evidence all statements and testimonial acts made by him after his arrest, claiming that at the time these statements and acts were made he was in custody and had not been advised of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He further moves to suppress all items of tangible property seized at the time of his arrest on the grounds that: (1) the search warrant failed to describe the items to be seized with sufficient particularity; (2) the warrant application failed to establish probable cause; and (3) the agents exceeded the scope of the warrant.

The Court held a hearing on the defendant's motions on April 22, 1994, wherein the government offered the testimony of Connecticut State Police Trooper John A. Dolan ("Dolan"). Dolan testified to the following facts. In the evening of January 21, 1994 an arrest team composed of various ATF agents, state troopers and local police gathered to execute the arrest and search warrants. The warrants were to be executed after the completion of a controlled delivery of a blue gym bag containing a silencer attached to a handgun and the components of a pipe bomb, including pipe, black powder, electrical cord, and a timer. Prior to the delivery an explosives expert for the ATF explained to the arrest team that the handgun was unloaded and the bomb components could be readily assembled.

Dolan and ATF Agent Glynn awaited completion of the delivery in a vehicle parked twenty yards east of Dodge's residence. Upon hearing the arrest signal Glynn and Dolan ran to Dodge's front door. There they encountered other members of the arrest team who knocked twice and announced their presence. After Dodge did not respond, Glynn and Dolan broke down the door with a ram. Dolan then pulled his gun, entered the residence, and encountered Dodge. Dolan told Dodge to show his hands and then ordered him to the ground. The trooper then handcuffed the defendant. While Dodge remained on the floor, Dolan asked "Where is the bomb?" Dodge glanced and nodded his head to the right and stated "It's over there sir." Dolan then observed the blue gym bag approximately four feet from the position Dodge originally had occupied when Dolan entered the residence. The arrest team then summoned the ATF explosives expert to secure the pipe bomb components.

Dolan then took Dodge to the second floor of the residence, where he was read his *Miranda* rights. At the time of the arrest law enforcement officers also executed the search warrant for Dodge's residence, and seized various items of tangible evidence.

## DISCUSSION

### I. Defendant's Amended Motion to Suppress Statements

Dodge advances two arguments in support of his motion. First, he argues that any evidence involving his statements and testimonial acts was obtained in the absence of the warning and advice of rights required by *Miranda v. Arizona* and its progeny. Second, he argues that the statements and testi-

---

**2.** These items were as follows:

a. Books, records, and documents reflecting the existence of an entity known as the Unified Ku Klux Klan[;]

b. Books, records, and documents reflecting William Dodge's position as Grand Dragon of the Unified Ku Klux Klan for the States of Connecticut, Massachusetts and Rhode Island[;]

c. Books, records, and documents reflecting the identities of members, associates, and confederates of the Unified Ku Klux Klan under William Dodge's leadership and control[;]

d. Books, records, and documents reflecting any victim, building, or structure to be bombed by William Dodge and/or his fellow Klan members, associates and/or confederates[;]

e. Books, records, and documents containing the qualifications for admission to and ceremonial rights to effect admission to the Unified Ku Klux Klan.

*See* January 21, 1994 dated Search Warrant, Attachment A.

monial acts were the product of the defendant's unlawful arrest in his home on the basis of a warrant that was not supported by probable cause.

### 1. *Miranda* Violation

█ The government does not dispute that the defendant was under arrest at the time he made the statements at issue, and thus concedes that the statements were the product of a custodial interrogation not preceded by an appropriate advice of rights. Rather, the government argues that the statements are admissible because they fall under the "public safety" exception to the *Miranda* rule. *See New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). The *Quarles* exception looks to the arresting officer's belief that a suspect may have a firearm nearby to determine whether his fear for the safety of the public, other officers, or himself warrants a pre-*Miranda* inquiry as to the location of that firearm. The exception thus requires the Court to weigh the officer's "need for answers to questions in a situation posing a threat to the public safety [against] the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657, 104 S.Ct. at 2632; *see also Berkemer v. McCarty,* 468 U.S. 420, 491 n. 10, 104 S.Ct. 3138, 3145 n. 10, 82 L.Ed.2d 317 (1984) ("When the police arrest a suspect under circumstances presenting an imminent danger to the public safety, they may without informing him of his constitutional rights ask questions essential to elicit information necessary to neutralize the threat to the public. Once such information has been obtained, the suspect must be given the standard warnings.").

The defendant argues that the *Quarles* exception does not apply because a controlled delivery cannot result in a threat to the public: no reasonable police officer would create deliberately a situation whereby the police deliver to the suspect a weapon that could endanger themselves or the public. Dodge also argues that no threat to the public existed in this case because the arrest took place in his home, and not in some public location, that he possessed the bomb

components for only a matter of seconds and therefore did not have the time to assemble them into a bomb, and that the police knew he was alone in his home at the time.

█ The Court rejects the defendant's contentions, however, in light of Dolan's persuasive testimony at the evidentiary hearing. As Dolan testified, the agents took steps to minimize the danger of the controlled transaction by delivering the pistol unloaded and by delivering an unassembled bomb. Dolan had been told that the bomb components could be easily assembled, however, and he was unaware that Dodge was alone in the residence. The arrest did not occur as planned, for the agents had not been able to arrest Dodge before he re-entered his residence and locked the door. Dolan also was unaware at the moment of Dodge's arrest whether an accomplice, possibly in the process of assembling the bomb, also was in the residence. Dolan reasonably believed that Dodge or an accomplice could assemble the bomb quickly, and he further believed that an assembled bomb posed a danger to other residents in the apartment complex as well as the arresting officers. Dolan's question "where is the bomb" therefore was not designed to elicit testimonial evidence but was necessary to secure the safety of police officers and the public in the swiftly developing scene at Dodge's residence. *See Quarles,* 467 U.S. at 658, 104 S.Ct. at 2632. As any reasonable police officer, given the limited facts available and placed in Dolan's position, could be expected to act in the same manner, the *Quarles* public safety exception applies. *See, e.g., United States v. Kelly,* 991 F.2d 1308, 1313 (7th Cir.1993); *Fleming v. Collins,* 954 F.2d 1109, 1113–14 (5th Cir.1992) *(en banc); United States v. Knox,* 950 F.2d 516, 519 (8th Cir.1991).

### 2. *Lack of Probable Cause for Arrest*

Dodge also asserts that the warrant pursuant to which he was arrested was not supported by probable cause, and argues that the arresting officers thus had no legitimate authority to arrest him in his home. *See* Deft's Amended Mot. to Suppress at 1. Any statements made would be the product of this unlawful arrest and thus would be sub-

ject to suppression. *See Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975) (holding in-custody statements which stem from an illegal arrest are not rendered admissible merely because defendant had been given *Miranda* warnings). In particular, Dodge claims that probable cause to support the warrant was lacking because the criminal complaint failed to state that the silencer was not registered. He argues that as the applicable statute criminalizes the receipt and possession of silencers only when they are not registered to the transferee in the National Firearms Registration and Transfer Record, mere receipt or possession of such firearms is insufficient to establish an offense. *See* Deft's Reply at 5 (citing *Haynes v. United States,* 390 U.S. 85, 95, 88 S.Ct. 722, 729, 19 L.Ed.2d 923 (1968)).

This ground is meritless. The arrest warrant charges the defendant with "Conspiracy to receive and possess an *unregistered* silencer in violation of Title 18, United States Code, Section(s) 371," *see* January 21, 1994 dated Arrest Warrant (emphasis added), and the affidavit in support of the warrant application also states that the silencer was unregistered. *See* Glynn Affidavit at 2, 11. Further, the sworn criminal complaint likewise charges that Dodge "conspire[d] to receive and possess an *unregistered* silencer." *See* January 21, 1994 dated Criminal Complaint (emphasis added). Accordingly, both the complaint and the warrant adequately specify the crime for which the defendant was arrested.

■ Further, as the Court found in its April 20, 1994 filed Ruling on the defendants' Motions to Dismiss, proof of receipt or possession of an unregistered firearm is sufficient to establish guilt under the National Firearms Act. *See* April 20, 1994 Ruling at 3–7. The Act does not require additional specificity concerning a transferee's failure to register a firearm. The criminal complaint

and Agent Glynn's affidavit provided ample grounds on which Magistrate Judge Margolis based her finding of probable cause.

Accordingly, as any statements elicited by Dolan's question "Where's the bomb" are subject to the public safety exception, and as Dodge's arrest was based upon a valid warrant, the instant motion is denied as to Dodge's statement "It's over there sir." Further, although Dodge's nod of his head in the direction of the blue bag was testimonial in nature, *see Pennsylvania v. Muniz,* 496 U.S. 582, 595 n. 9, 110 S.Ct. 2638, 2647 n. 9, 110 L.Ed.2d 528 (1990), it was made in response to Dolan's question, and it also falls under the public safety exception.

■ Dodge also moves to suppress an additional comment to Dolan, in which Dodge allegedly stated "Nice set up guys."[3] As Dodge allegedly made this statement after the discovery of the blue bag containing the bomb components, it is not subject to the Court's finding of a public safety exception under *Quarles.* The statement, if made, occurred prior to Dodge's receipt of his *Miranda* warnings. The *Miranda* exclusionary rule does not apply, however, outside the context of "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The defendant did not cross-examine Dolan on this issue at the suppression hearing, and he failed to establish that any form of interrogation led to Dodge's statement. Accordingly, the defendant's motion to suppress also is denied as to this latter statement.

## II. Defendant's Motion to Suppress Tangible Evidence

Dodge also moves to suppress various items of tangible property seized at the time of his arrest[4] on the grounds that (1) the

---

3. The statement is set forth in Dolan's arrest report, which in relevant part reads as follows:

   I then began to escort William Dodge to the second floor of his residence. As I began to depart the garage with William Dodge, Dodge uttered "Nice set up guys." Upon arrival to the second floor Agent Glynn read William Dodge his rights.

Dolan Affidavit, Govt's Omnibus Response, Exh. B, at 5.

4. The return of the search warrant, filed on January 25, 1994, lists the following items seized from Dodge's residence:

   1) 1 box of miscellaneous documents, presentation board, KKK materials[;]

search warrant failed to describe the items to be seized with sufficient particularity; (2) the warrant application failed to establish probable cause; and (3) the agents exceeded the scope of the warrant. The government raises several objections to the motion, but further concedes none of these items will be offered as evidence in its case in chief. In light of this concession, the defendant's motion is denied without prejudice to renewal at trial.

## CONCLUSION

For the reasons stated above, the defendant's amended motion to suppress statements [# 53] is hereby DENIED, while the defendant's motion to suppress tangible evidence [# 21] is hereby DENIED without prejudice.

SO ORDERED.

2) 1 box miscellaneous documents from kitchen and copy area[;]
3) 1 box of miscellaneous clothing and documents from master bedroom[;]
4) 1 bag miscellaneous documents from office in living room area. Robes and clothing[;]
5) Mossberg pump Action Shotgun, S/N K111346[;]
6) Ruger Carbine, .44 Mag. rifle, S/N 100–35396[;]
7) Cobray Shotgun, S/N 6708 w/ misc ammo from kitchen.
*See* Deft's Memorandum in Support of Motion to Suppress Tangible Evidence, Exh. B.