**UNITED STATES of America**
**v.**
**Hendrix RICHARDSON and**
**Bernard Wilson.**

**UNITED STATES of America**
**v.**
**Raymond BEASON, Tom Beason, Edgar**
**Lee Whatley, Edward Reed Whatley,**
**Rufus Wyckoff, and Frank Moody.**

**UNITED STATES of America**
**v.**
**Ray Edward DAVIS.**
**Crim. Nos. 2416–E, 2420–E, 2422–E.**

United States District Court
M. D. Alabama,
Eastern Division.
April 23, 1968.

Ben Hardeman, U. S. Atty., Jack B. Patterson, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

Carl E. Maye, McKee & Maye, Robert H. Brown, Brown & McMillan, Opelika, Ala., for defendants Richardson and Wilson.

Tom Radney, Alexander City, Ala., Edmond Rinehart, John Patterson, Montgomery, Ala., for defendants Beason, Whatley, Wyckoff and Moody.

Tom Radney, Alexander City, Ala., for defendant Davis.

## OPINION

PITTMAN, District Judge.

The defendants in these cases were indicted and charged with having in their possession or control unregistered stills in violation of 26 U.S.C. Sec. 5601(a) (1). Acting upon the suggestion made in Chief Justice Warren's dissent in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 716, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 716, 19 L.Ed.2d 906 (1968); and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) that those decisions are "opening the door to a new wave of attacks on a number of federal registration statutes whenever the registration requirement touches upon allegedly illegal activities," Grosso, 390 U.S. at 83, 88 S.Ct. at 721, 19 L.Ed. 2d at 921, the defendants moved to dismiss the indictments contending that the registration requirements imposed by 26 U.S.C. § 5179(a) violate their Fifth Amendment privilege against self-incrimination.

Although the majority opinions in Marchetti and Grosso "assumed" that the government's principal interest in the occupational and excise taxes on gambling there involved was "the collection of revenue, and not the prosecution of gamblers," 390 U.S. 68, 88 S.Ct. 713, 19 L.Ed.2d 912, it is apparent that the Court was deeply concerned with the constitutional validity of a statutory scheme designed to obtain information which would be turned over to the state and federal prosecutors. 26 U.S.C. Sec. 6107 specifically requires that an alphabetical list of all persons paying the occupational tax on gambling be kept in the district internal revenue offices and furnished upon request to "any prosecuting officer of any State, county, or municipality." Although no express statutory instruction requires similar reporting with regard to those paying the excise tax on wagering, the Court observed that:

\* \* \* the Revenue Service, evidently acting under the authority of certain general statutory provisions, has undertaken to tender this information to interested prosecuting authorities. 390 U.S. 66, 88 S.Ct. 712, 19 L.Ed.2d 911.

The Court's concern that the registration requirements reflected "a significant element of Congress' purposes," in aiding enforcement of state gambling prohibitions, Marchetti, 390 U.S. 59, 88 S.Ct. 708, 19 L.Ed.2d 904, was bolstered by the fact that most forms of unorganized gambling were exempted from the operation of the federal statutes with the effect that they applied "almost exclusively to illegal, organized gambling." Concurring opinion of Mr. Justice Brennan, 390 U.S. at 74, 88 S.Ct. at 717, 19 L.Ed.2d at 916. Thus, in large part, the constitutional infirmity of the registration requirements in the gambling cases, like those involved in Haynes, supra, concerning the registration of certain widely prohibited firearms, is that the statutes were directed only toward a very narrow group of persons "inherently suspect of criminal activities," in "an area permeated with criminal statutes." Grosso, 390 U.S. 64, 88 S.Ct. 712, 19 L.Ed.2d 910. The Court was very careful to distinguish United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927) dealing with the filing of income tax returns, and the required records doctrine embodied in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) observing that:

\* \* \* the constitutional privilege does not prevent the use by the United States of information obtained in connection with regulatory programs of general application.

Haynes, 390 U.S. 98, 88 S.Ct. 731, 19 L.Ed.2d 933.

While the Court could not discern such a general regulatory program in the registration requirements involved in Marchetti, Grosso, and Haynes, (one Jus-

tice found a clear "congressional purpose to gather evidence from citizens in order to secure their conviction of crime," concurring opinion of Mr. Justice Brennan, 390 U.S. 76, 88 S.Ct. 718, 19 L.Ed.2d 917) it is obvious that the registration provisions ·concerning the taxation of the liquor industry do serve a legitimate regulatory purpose in protecting a major source of revenue. They are not directed at a highly selective group inherently suspect of criminal activity, but apply to all persons, even states and municipalities, which engage in activities connected with distilled spirits. State of Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307 (1934).

■ Justice Brennan observed that in situations not involving statutory systems "manifesting a patent violation of the privilege" against self-incrimination, the determination of constitutionality would be more difficult. 390 U.S. 76, 88 S.Ct. 718, 19 L.Ed.2d 917. That predicted difficulty arises in these cases. The government has a legitimate regulatory purpose in enforcing its registration provisions pertaining to the liquor industry. The Congressional purpose in enacting these requirements was to facilitate collection of taxes, not to coerce evidence from persons engaged in illegal activities for use in their prosecutions. As it happens, however, that could be the effect of compliance in Alabama, for the legislation establishing the state's Alcoholic Beverage Control Board expressly saved the prohibition era laws "relating to manufacture or possession of illicit distilled liquor or apparatus for the manufacture of same." Code of Alabama, Title 29, Section 75 (Recomp.1958). Thus it is illegal for "any person, firm, or corporation" to manufacture whiskey in Alabama. Title 29, Section 103.

The statutory scheme as enacted by Congress is not to compel suspected criminals to confess their crimes. Alabama's prohibition cannot, however, deprive Congress of its long recognized interest in obtaining revenue from the taxation of illegal activities. In providing for registration provisions to protect the collection of that revenue Congress did not direct any federal officer to assist in enforcing any state's prohibition laws,[1] and there are no established procedures in force for notifying state authorities of the names of registrants.

Since there is no Congressional policy against manufacturing whiskey, there is no basis, as there was in the gambling cases, for not permitting the United States to continue to enforce the registration provisions while imposing restrictions on the use of information obtained as a consequence of compliance. The United States urged this solution in *Marchetti*, and the Court observed that this suggestion was "in principle an attractive and apparently practical resolution of the difficult problem before us." 390 U.S. 58, 88 S.Ct. 708, 19 L.Ed.2d 903. The Court, in fact, had previously given its approval to such an approach in Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). It was not accepted in *Marchetti* because of the apparent Congressional interest, as manifested in 26 U.S.C. Section 6107, in aiding state prosecutions by passing on information obtained through the registration process:

> We must therefore assume that the imposition of use-restrictions would directly preclude effectuation of a significant element of Congress' purposes in adopting the wagering taxes. * * We cannot know how Congress would assess the competing demands of the federal treasury and of state gambling prohibitions; we are, however, entirely certain that the Constitution has entrusted to Congress, and not to this Court, the task of striking an appropriate balance among such values.

390 U.S. 59, 88 S.Ct. 708, 19 L.Ed.2d 904.

No such conflict in Congressional policy exists with regard to the registration statutes involved here. A review of the

---

1. Cf. 18 U.S.C. Sections 1262 and 1265 applying to shipments into "bone dry" states.

**422**

history, purpose, and operation of the federal liquor laws indicates that they are not subject to the objections expressed in the opinions of Court in *Marchetti, Grosso,* and *Haynes.* Distilled spirits and other liquors have been subject to federal taxation since 1791. 1 Stat. 203. Substantial revenue for both the state and federal governments has been derived in modern times from various taxes imposed on liquor.

The Supreme Court has recognized that the detailed statutory scheme found in the internal revenue laws with respect to distilled spirits has the purpose of protecting the revenue and insuring the collection of the taxes imposed. In United States v. Ulrici, 111 U.S. 38, 4 S.Ct. 288, 28 L.Ed. 344 (1884) the Court stated:

> It is clear even, upon a cursory reading, that the well-considered and minute provisions of the Revised Statutes found in chapter 4 entitled "Distilled Spirits," of Title 35, entitled "Internal Revenue," were adopted *with one purpose only,* namely: *to secure the payment of the tax imposed* by law upon distilled spirits.

> All the regulations for the manufacture and storage, the marking, branding, numbering and stamping with tax stamps of distilled spirits, and all the penalties, forfeitures, fines and imprisonments prescribed by the chapter mentioned *have that end only in view.* (Emphasis added).

Id., 111 U.S. at 40, 4 S.Ct. at 289, 28 L. Ed. 345.

Throughout Title 26 of the U.S.Code there are various statutes which are part of the stringent qualifications and controls designed to protect the sources of revenue derived from the taxation of liquor. E. g., 26 U.S.C. Section 5105(a), obtaining a permit to set up a still; Section 5179(a), registering a still which is set up; Sections 5171 and 5172, registering as a proprietor of a distilled spirits plant before engaging in the business of a distiller; Section 5173, filing a bond before commencing the business of a distiller; Section 5178, obtaining approval of the location, construction, and arrangement of a distilled spirits plant. All of these statutes are integral parts of the comprehensive taxing scheme.

■ Thus, since it appears that the statutory scheme is not to compel suspected criminals to confess their crimes, but to protect a public interest in the collection of taxes, the court concludes that the *Marchetti, Grosso,* and *Haynes* decisions do not require the dismissal of these indictments.

An order in accordance with this opinion has previously been entered in each of these cases.