Willie **WILLIAMS**

v.

**UNITED STATES** of America.

Civ. No. 2184.

United States District Court
E. D. North Carolina,
Raleigh Division.

April 3, 1969.

Willie Williams, per se.

Robert H. Cowen, U. S. Atty., Weldon A. Hollowell, Asst. U. S. Atty., Raleigh, N. C., for respondent.

## OPINION AND ORDER.

BUTLER, Chief Judge.

At his trial the petitioner, Willie Williams, entered pleas of guilty to four counts of violating the Internal Revenue Liquor Laws.[1] The court found as a fact that he was guilty of all four counts as charged, consolidated the counts for the purpose of judgment and sentenced him to three years imprisonment.

In this motion to vacate his sentence under Title 28, United States Code, Section 2255, petitioner raises the issue whether his Fifth Amendment privilege against self-incrimination was violated when he was convicted of possession of a distillery which was not registered, as required by Title 26, United States Code, Section 5179(a), in violation of 26 United States Code, Section 5179. The court is of the opinion that there was no violation of petitioner's privilege against self-incrimination.

The following cases are pertinent to the issue presented in this action: Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); United States v. McGee, 282 F.Supp. 550 (M.D.Tenn. 1968).

In *Albertson* it was held that the orders of the Subversive Activities Control Board requiring persons to register on forms which required an admission of membership in the Communist Party were inconsistent with the protection of the self-incrimination clause of the Fifth Amendment. The admission by the persons of their membership in the Communist Party could have been used as the basis of a prosecution under several federal criminal statutes.[2]

*Marchetti* and *Grosso* deal with the registration requirements of the federal wagering tax statutes.[3] *Haynes* is con-

---

1. At the April 15, 1968, Special Criminal Session of the United States District Court for the Eastern District of North Carolina, Raleigh Division, petitioner plead guilty to each of the following counts:
   (1) Possession of an unregistered distillery in violation of 26 U.S.C. § 5179.
   (2) Working at an unregistered distillery in violation of 26 U.S.C. § 5180.
   (3) Possession of mash fit for distillation in violation of 26 U.S.C. § 5601(a) (7).
   (4) Possession of materials intended for illegal use to violate the Inter-

nal Revenue Liquor Laws in violation of 26 U.S.C. § 5686(a).

2. Two such federal criminal statutes are:
   (1) 18 U.S.C. § 2385,
   (2) 50 U.S.C. § 783(a).

3. In *Marchetti* the indictments averred that petitioner and others conspired to evade payment of the annual occupational tax imposed by 26 U.S.C. § 4411, and that petitioner wilfully failed to pay the occupational tax and wilfully failed to register as required by 26 U.S.C. § 4412 before engaging in the business of accepting wagers.
   In *Grosso* the indictments averred in various counts, wilful failure to pay the ex-

cerned with possession of a firearm which had not been registered with the Secretary of the Treasury.[4] In all three cases it was held that the petitioners' proper assertions at their trials of the privilege against self-incrimination constituted a complete defense to prosecutions under the pertinent federal statutes.

In each of the three cases the Court emphasized as it had stated in *Albertson* that the registration statutes in each case were "directed at a highly selective group inherently suspect of criminal activities," and that they concern, not "an essentially noncriminal and regulatory area of inquiry," but instead "an area permeated with criminal statutes." 382 U.S. at 79, 86 S.Ct. at 199.

*Marchetti, Grosso,* and *Haynes* particularly stressed the wide prohibition of the proscribed activities under both federal and state criminal statutes. The court was careful to note, however, that it was "fully cognizant of the importance for the United States' various fiscal and regulatory functions of timely and accurate information," and did nothing to "prevent either the taxation or the regulation by Congress of activities otherwise made unlawful by state or federal statutes." 390 U.S. at 60, 88 S.Ct. at 709.

■ The present case is distinguishable on several grounds from *Albertson, Marchetti, Grosso,* and *Haynes.* Here the concern is with the federal liquor laws which are not open to the same objections expressed in those cases. Distilled spirits have been the subject of federal taxation since 1791. The taxes placed on distilled spirits provide a large share of the federal revenue and in modern times have been a major source of

revenue for the states. The revenue derived from the taxation of distilled spirits is substantial,[5] and the commodity has been the subject of much tax resistance and evasion because of the wide disparity between the cost of the product and the amount of the tax imposed. The laws affecting the liquor industry are, therefore, permeated with criminal penalties because close regulation and control are necessary to protect this large source of revenue. The Supreme Court has recognized that the detailed statutory requirements imposed by the internal revenue laws with respect to distilled spirits have an important purpose, "namely, to secure the payment of the tax imposed by law upon distilled spirits." United States v. Ulrici, 111 U.S. 38, 4 S.Ct. 288, 28 L.Ed. 344 (1884). The purpose of these statutes is not to suppress the activities and not to coerce evidence from persons engaged in illegal activities for use in their prosecution. The primary purpose is clearly to insure the collection of the tax and to protect the revenue.

The provisions of the federal law in this area are all aimed at qualifying legal proprietors of distilleries. When a person qualifies under the proper federal statutes he is not subject to prosecution under any other federal law unless, of course, he fails to maintain the proper standards and observe the regulations applicable to all registered distilleries. The product of the distilleries is for human consumption; it is an absolute necessity that there be uniform regulations for such an industry.

■ The federal laws relating to distilleries and distilled spirits are revenue and regulatory statutes compliance with which does not subject a person to self-incrimination under federal law.

---

cise tax imposed on wagering by 26 U.S.C. § 4401, wilful failure to pay the special occupational tax imposed by 26 U.S.C. § 4411, and conspiracy to defraud the United States by evading payment of both taxes.

4. In *Haynes* the indictment averred that petitioner in violation of 26 U.S.C. §

5851, knowingly possessed a firearm, as defined by 26 U.S.C. § 5848(1) which had not been registered with the Secretary of the Treasury or his delegate, as required by 26 U.S.C. § 5841.

5. The federal revenue collected in 1966 from the taxation of distilled spirits amounted to 3.7 billion dollars.

The self-incrimination, if it exists, results from state statutes which have no application outside the territorial boundaries of the state.[6] No single state or group of states can be permitted to invalidate a constitutional federal statute designed for the purpose of producing revenue and regulating an industry. Unlike *Albertson, Marchetti, Grosso,* and *Haynes,* the present case does not involve self-incrimination resulting from related federal statutes designed to penalize persons required to register because they have engaged in a highly suspect activity.

Here it is the state law that may result in self-incrimination, and any challenge based upon a violation of self-incrimination should be made in the state court when, and if, the alleged incriminating evidence is sought to be introduced at the trial.

In United States v. McGee, 282 F. Supp. 550 (M.D.Tenn.1968), on a motion to dismiss the indictment, it was held that several federal statutes relating to the distillation of spiritous liquor concerned themselves with an essentially noncriminal and regulatory area of inquiry and did not violate the self-incrimination provisions of the Fifth Amendment.[7] In that case the distillation of liquor was illegal in the county where the offense was alleged to have occurred. The same reasoning is applicable to the present case where the illegality of the activity occurs as a result of statewide law.

The *Marchetti, Grosso,* and *Haynes* decisions specify that they only apply where a proper assertion of the privilege against self-incrimination occurred, and in all three cases the assertion was made at the trial.[8] The privilege against self-incrimination is personal and must be asserted by the defendant personally at the time the self-incriminating matter is offered against him. In the present case the petitioner did not assert any privilege against self-incrimination at any time before or during his trial in the federal court. The assertion appears for the first time in the present motion to vacate his sentence.

The court is of the opinion that petitioner's privilege against self-incrimination has not been violated and that, in

---

6. The North Carolina General Statutes which are alleged to result in self-incrimination are in pertinent part as follows:

   N.C.Gen.Stat. § 18–32. It is unlawful for any person * * * to have or keep in possession, for the purpose of sale, except as otherwise authorized by law, any spirituous * * * liquors, and proof of any one of the following facts shall constitute prima facie evidence of the violation of this section:

   (1) The possession of a license from the government of the United States to sell or manufacture intoxicating liquors * * *.

   N.C.Gen.Stat. § 18–35. The possession of a license or the issuance to any person of a license to manufacture, rectify or sell, at wholesale or retail, spirtuous liquors by the United States government * * * shall be prima facie evidence that the person * * * is guilty of doing the act permitted by such license * * *.

   N.C.Gen.Stat. § 18–35.1. It is unlawful for any person * * * to procure, obtain, possess, purchase * * * a license, permit stamp or other authorization from the government of the United States to manufacture, sell, possess, transport, handle or purchase intoxicating liquors in the State of North Carolina; and upon conviction or confession any such person * * * shall be guilty of a misdemeanor punishable in the discretion of the court * * *.

7. The indictment in *McGee* charged violations of:

   (1) 26 U.S.C. § 5173, requiring a qualification bond;

   (2) 26 U.S.C. § 5179, requiring stills to be registered, and

   (3) 26 U.S.C. § 5222, prohibiting making or fermenting mash fit for distillation on other than bonded premises.

8. See 390 U.S. at 41, 42, 88 S.Ct. at 698, 699; 390 U.S. at 63, 88 S.Ct. at 711; and 390 U.S. at 86, 87, 99, 100, 88 S.Ct. at 724, 725, 731, 732.

any event, no proper and timely assertion of the privilege was made.

For the foregoing reasons, it is ordered that petitioner's motion to vacate his sentence is hereby denied.