**UNITED STATES of America**

v.

**Augustus HUNT, Appellant.**

**No. 17258.**

United States Court of Appeals
Third Circuit.

Argued Oct. 2, 1969.

Decided Dec. 1, 1969.

Certiorari Denied March 30, 1970.
See 90 S.Ct. 1250.

———◆———

Ralph J. Kmiec, Kmiec & Palumbo, Camden, N. J., for appellant.

Robert W. Page, Asst. U. S. Atty., Camden, N. J. (Donald Horowitz, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before STALEY, SEITZ and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

STALEY, Circuit Judge.

Augustus Hunt was tried on five counts of violations of Federal statutes arising out of the operation of a liquor distillery. The indictment charged: engaging in the business of a distiller without having registered and given bond, violations of 26 U.S.C. § 5601(a) (2) and (4), respectively; fermenting mash fit for distillation on premises other than an authorized distillery in violation of 26 U.S.C. § 5601(a) (7); engaging in such a business with intent to defraud the United States of tax in violation of 26 U.S.C. § 5602; and violating 26 U.S.C. § 5681(c) by working in a distillery on which a proper sign was not placed. Hunt was convicted on all counts and sentenced. He appeals from the judgment of sentence.

In a pre-trial motion to dismiss the indictment, Hunt asserted that his privilege against self-incrimination would be violated if he were forced to comply with the registration, bonding, and posting requirements. This conclusion has been urged upon us in this appeal.

His timely assertion of the privilege thus presents the issue for determination, that is, whether the Fifth Amendment privilege against self-incrimination provides a complete defense to charges arising out of operation of an illicit liquor distillery. Hunt relies on Marchetti v. United States, 390 U.S. 39, 88

1

S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S. Ct. 716, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), for analogous situations where the privilege did furnish such a defense. For the reasons which follow, we think that these cases are distinguishable.

In *Marchetti*, the Supreme Court held that the timely assertion of the privilege provided a complete defense to charges of violations of the Federal wagering statutes. In *Grosso*, the Court reversed a conviction for willful failure to pay the excise tax imposed on wagering, holding the privilege a defense. The Court reasoned in *Haynes* that since the privilege would provide a defense to charges of unlawful failure to register a firearm as defined by the National Firearms Act, it was similarly a defense to a charge of unlawful possession of such a firearm. The most recent decision, *Leary*, held the privilege a defense to a conviction under the Marihuana Tax Act.

In each of these cases, the Court indicated that the critical determination which gave rise to the shield of the privilege was that the party was faced with a "real and appreciable" hazard of self-incrimination. This is to be distinguished from situations where the hazard is "imaginery and insubstantial."[1] In *Marchetti, Grosso,* and *Leary,* the Court noted the comprehensive state and Federal statutory schemes proscribing the activities.[2] These statutes were directed at a "selective group inherently suspect of criminal activities," Albertson v. SACB, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). This was distinguished from requirements imposed in

an "essentially non-criminal and regulatory area of inquiry," *Albertson, supra,* at 79, 86 S.Ct. at 199. See Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). Further, it considered that the Congressional purpose in each instance was two-fold. One purpose, at least presumed, United States v. Calamaro, 354 U.S. 351, 358, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), was to generate revenue. The second purpose was to suppress the activities involved. Another determinant was the statutory provision requiring that the information obtained by Federal authorities be provided to state prosecutors. The concurrence of these elements was determined sufficient to create a "real and appreciable" risk of self-incrimination, assuming compliance with the statutes requiring disclosure.

The facts presented by this case furnish several bases for distinction. First, there is no comprehensive statutory framework absolutely prohibiting the activity of operating a liquor distillery. In New Jersey, where the crime was committed, operating a distillery is not *per se* unlawful. The state statute, N. J.S.A. 33:2–1, like the Federal statutes, 26 U.S.C. §§ 5171, 5179, requires only that distilleries be registered. The commissioner of alcoholic beverage control is authorized to issue regulations governing such activities. This is in contrast to gambling which is, with certain limited exceptions, an unlawful activity in almost every state, *Marchetti,* supra, and *Grosso,* supra. Possession of one of an enumerated type of firearm is unlawful, *Haynes,* supra. Possession of marihuana is generally a criminal offense, *Leary,* supra. Each of these cases was concerned with an *unlawful activity.* Here, we are considering a *lawful ac-*

---

1. Reg. & Boyes, 1 B. & S. 311, 330 (1861); Brown v. Walker, 161 U.S. 591, 599, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Marchetti, supra 390 U.S. at 48, 53, 88 S.Ct. 697; Grosso, supra 390 U.S. at 66–67, 88 S.Ct. 716; Haynes, supra 390 U.S. at 97, 88 S.Ct. 722; Leary, supra 395 U.S. at 13, 89 S.Ct. 1532.

2. In *Haynes* it was not contended that he was subject to state prosecution. The court, in a footnote, discussed the prospect of state prosecution to which a Federal firearms registrant might be subjected. 390 U.S. at 97, n. 11, 88 S.Ct. 722.

*tivity* which was done in an *unlawful manner*.

Further, it would appear that the statutes involved here are principally regulatory in nature rather than suppressive. In United States v. Ulrici, 111 U.S. 38 at 40, 4 S.Ct. 288, at 289, 28 L.Ed. 344 (1884), it is stated:

> "It is clear \* \* \* that the \* \* provisions \* \* \* entitled 'Distilled Spirits' \* \* \* were adopted with one purpose only, namely to secure the payment of the tax imposed by law upon distilled spirits." [3]

This court at oral argument took notice, without objection, of the vast dimensions of the legitimate liquor distilling industry.[4] Even though this is an area with many criminal statutes,[5] we cannot say that the statutes are aimed at a selective group inherently suspect of criminal activity. The statutes apply to everyone engaged in this business. See, Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307 (1934); United States v. Richardson, 284 F.Supp. 419 (M.D.Ala. 1968).

Appellant cites 26 U.S.C. § 6107 which requires that a list of taxpayers paying taxes under subtitles D and E be made available to any state prosecuting authority. Subtitle E, Ch. 51, 26 U.S.C. § 5001 et seq.; § 5692, provides for taxation and regulation of distilled spirits. This is the same transfer of information element found present in *Marchetti, Grosso,* and *Leary.* Thus appellant asserts that compliance with the registration requirement would have subjected him to a substantial risk of self-incrimination. However, this argument overlooks the fact that distilling liquor is not an unlawful activity. It is the operation of an unregistered distillery that is unlawful. Had Hunt registered his distillery, it would have been a legitimate enterprise.

The basis of Hunt's contention is really that because both the state and Federal statutes required registration of liquor distilleries, compliance with the Federal registration requirement would have subjected him to a risk of prosecution for non-compliance with the state statute. This, he reasons, created an appreciable hazard of self-incrimination for Federal registration. We cannot agree. To follow his reasoning to its logical conclusion would mean that any time a state and the Federal Government had parallel statutes either requiring registration of or imposing taxes upon an otherwise lawful activity, an individual under indictment for a violation of one could claim the privilege (assuming a transfer of information) as a defense because he had not complied with the other. Such a rule would place a premium on two violations of the law, since one would have to violate both state and Federal law in order to claim the privilege. If he complied with one, he could not. Plainly, in areas such as the taxation of distilled spirits such a result cannot be tolerated.

In conclusion, there is no statutory framework in the instant case which is aimed at a selective group inherently suspect of criminal activity. The purpose of the Federal statutes is to regulate rather than suppress. Even though there is a reasonable probability of a transfer of information, clearly there is no hazard of self-incrimination within the Supreme Court's rationale in *Marchetti, et al.* Accordingly, we hold that the Fifth Amendment privilege against self-incrimina-

---

3. Williams v. United States, 297 F.Supp. 1030 (E.D.N.C.1969); United States v. Richardson, 284 F.Supp. 419 (M.D.Ala. 1968).

4. In United States v. Walden, 411 F.2d 1109 (C.A. 4, 1969), and Brown v. United States, 401 F.2d 769 (C.A. 5, 1968), cert. denied, 394 U.S. 962, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969), each court noted that the possession of distilled spirits is legal to some extent in each of the fifty states. In *Williams,* supra note 3, the court noted that the Federal revenue from the distilling industry was 3.7 billion dollars in 1966.

5. See, for example, N.J.S.A. 33:1–50, 33:1–78, and 33:2–10.

**4**

tion does not provide a defense to these charges.[6]

This conclusion applies with equal force to the bonding and posting violations. Under 26 U.S.C. § 5173 and even though he has registered, the registrant may not begin operations without first giving a bond. A proper sign must also be erected on the premises, 26 U.S.C. § 5180. Each of these requirements must be fulfilled. The hazards of complying with only one or two are apparent.

After examination of the record, the court finds no merit in appellant's assertion of trial errors. The judgment of the district court will be affirmed.

---

6. United States v. Walden, supra note 4; *Wilson* v. United States, 409 F.2d 604 (C.A. 5, 1969); Thornburg v. United States, 406 F.2d 1060 (C.A. 5, 1969); Anderson v. United States, 403 F.2d 206 (C.A. 5, 1968); Williams v. United States, supra note 3; United States v. Richardson, supra note 3; United States v. Young, 284 F.Supp. 1008 (E.D.Tenn. 1968); *see*, Grant v. United States, 407 F.2d 56 (C.A. 5, 1969); Hall v. United States, 407 F.2d 1320 (C.A. 5, 1969); Shoffeitt v. United States, 403 F.2d 991 (C.A. 5, 1968), cert. denied, 393 U.S. 1084, 89 S.Ct. 868, 21 L.Ed.2d 777 (1969); Brown v. United States, supra note 4; *contra*, United States v. Fine, 293 F.Supp. 189 (E.D.Tenn.1968).