**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard A. LAUCHLI, Jr., Defendant-Appellant.**

**No. 18595.**

United States Court of Appeals, Seventh Circuit.

June 10, 1971.

Richard Albert Lauchli, Jr., Robert Popper, Kansas City, Mo., for appellant.

Donald B. Mackay, U. S. Atty., Frank J. Violanti, U. S. Atty., Springfield, Ill., for appellee.

Before CUMMINGS, KERNER and STEVENS, Circuit Judges.

KERNER, Circuit Judge.

Defendant-appellant, Richard A. Lauchli, Jr., was convicted by a jury on fifteen counts of an indictment alleging

violations of the National Firearms Act and the Gun Control Act. The fifteen offenses consisted of one count for dealing in firearms without a license (26 U. S.C. §§ 5801, 5802 and 5861(a)), one count for dealing in firearms without registering with the Internal Revenue Service (18 U.S.C. §§ 922(a) (1) and 923(a)), seven counts for possessing firearms not registered in the National Firearms Registration and Transfer Record (26 U.S.C. §§ 5841 and 5861), three counts for illegally transferring firearms (26 U.S.C. §§ 5812(a) (1)–(6), 5845(a) and 5861), two counts of possessing firearms not bearing serial numbers (26 U.S.C. §§ 5842(b) and 5842(c)), and one count for dealing in firearms with a non-resident of the state in which he resided (18 U.S.C. §§ 922(a) (5) and 923). As a result of these convictions, Lauchli was sentenced to a twelve-year term to run concurrently with an eight-year sentence imposed in another criminal matter. See United States v. Lauchli, 371 F.2d 303 (7th Cir. 1966).

## I.

The violations which led to Lauchli's arrest and conviction were discovered by John Ennis, an undercover agent of the Treasury Department, who was posing as a tool and dye manufacturer for Milwaukee, Wisconsin. Ennis had been introduced to Lauchli by a fellow prisoner prior to Lauchli's release from federal prison in February, 1969. On March 20, 1969, Ennis contacted Lauchli and discussed the purchase of ten silencers and some Thompson submachine guns from the defendant. Lauchli stated that he was in possession of approximately 1400 Thompson submachine guns with a cut in the side that ran along the trigger guard and explained to the agent the process by which these guns could be repaired. Lauchli then offered to sell Ennis one rewelded weapon for $150 and other unrepaired submachine guns for $75. However, no sale was consummated at this time.

On March 21, 1969, pursuant to the arrangement made the previous evening, Lauchli met Ennis and drove him to his home in Collinsville, Illinois. A sale of weapons to a "partner" of Ennis was discussed, and Ennis purchased two Thompson submachine guns and ten silencers for $450. Lauchli then showed Ennis two manuals which explained the operation of the guns as well as a list of firearm parts which the defendant was offering for sale. A possible purchase of semi-automatic rifles, which the defendant had for sale, was also discussed.

On April 9, 1969, Ennis again visited the Lauchli residence, this time indicating a desire to purchase ten Thompson submachine guns. Lauchli asked to be allowed an hour and a half, apparently for the purpose of preparing the weapons, and Ennis departed. Upon his return, Ennis purchased ten Thompson submachine guns and fifteen barrels for $790. The defendant also gave Ennis a color code for future orders.

On April 15, 1969, Ennis phoned Lauchli and, using the color code, ordered one hundred thirty Thompson submachine guns. When Ennis arrived at the Lauchli residence on the designated date, Lauchli asked permission to search the agent for a Kel-Com set. Ennis drew his pistol and arrested the defendant. Shortly thereafter, several other Treasury Agents arrived with search warrants for both the Lauchli residence and the Lomax Machine Shop, located approximately seventy-five yards from the Lauchli residence. Two hundred seventy-seven Thompson submachine guns were found in the basement of defendant's home. Two white phosphorus rifle grenades were found in the Lomax Machine Shop and one hundred eighty-four submachine guns were found buried in a trash pile twenty-five yards behind the building.

## II.

Defendant contends that all convictions must be set aside as violative of his privilege against self-incrimination.

Primary reliance is placed on Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), which held that invocation of the privilege presented a complete defense to prosecutions under the National and Federal Firearms Acts then in effect. However, following that decision, Congress revised the Acts with the intention of eliminating the infirmities outlined in Haynes.[1] The Supreme Court in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), has recently approved certain provisions of the amended Acts. As noted by Mr. Justice Douglas in Freed, important changes in the statutory complex and in the mode of enforcement have occurred:

> At the time of Haynes "only weapons used principally by persons engaged in unlawful activities would be subjected to taxation." Id., at 87, 88 S.Ct. at 725. Under the Act, as amended, all possessors of firearms as defined in the Act are covered, except the Federal Government. 26 U.S.C. Supp. V § 5841.
>
> At the time of Haynes any possessor of a weapon included in the Act was compelled to disclose the fact of his possession by registration at any time he had acquired possession, a provision which we held meant that a possessor must furnish potentially incriminating information which the Federal Government made available to state, local, and other federal officials. Id., at 95–100, 88 S.Ct., at 729–732. Under the present Act only possessors who lawfully make, manufacture, or import firearms can and must register them; *the transferee does not and cannot register*. It is, however, unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."
>
> At the time of Haynes, as already noted, there was a provision for sharing the registration and transfer information with other law enforcement officials. Id., at 97–100, 88 S.Ct., at 730–732. The revised statute explicitly states that no information or evidence provided in compliance with the registration or transfer provisions of the Act can be used, directly or indirectly, as evidence against the registrant or applicant "in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence." The scope of the privilege extends, of course, to the hazards of prosecution under state law for the same or similar offenses. See Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; Marchetti v. United States, 390 U.S. 39, 54, 88 S.Ct. 697, 19 L.Ed.2d 889. And the appellees, apparently fearful that the Act as written does not undertake to bar the use of federal filings in state prosecutions, urges that those risks are real in this case. It is said that California statutes punish the possession of grenades and that federal registration will incriminate appellees under that law.
>
> The Solicitor General, however, represents to us that *no information filed* is as a matter of practice disclosed to any law enforcement authority, except as the fact of nonregistration may be necessary to an investigation or prosecution under the present Act [Footnotes omitted.] 401 U.S. 601, 602–605, 91 S.Ct. 1112, 1115, 1116 (1971).

Two of the enumerated changes deserve reiteration. First, the Court has decided that the Firearms Acts are no longer inconsistent with the gravamen of the Marchetti trilogy (Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.

---

1. See S.Rep.No.1501, 90th Cong., 2d Sess. 26, 42, 48, 52; H.Rep.No.1956, 90th Cong., 2d Sess. 35.

Ed.2d 923 (1968)) in that they are no longer directed to a selective group inherently suspect of criminal activities. See Marchetti v. United States, 390 U.S. at 57, 88 S.Ct. 697. Second, the immunity provision (26 U.S.C. § 5848; and see 26 C.F.R. § 179.202) together with the government practice of non-disclosure of information satisfies the Fifth Amendment privilege, including the hazards of prosecution under state law for the same or similar offenses. Freed v. United States, *supra*. We therefore conclude that appellant's privilege against self-incrimination was not violated by virtue of this prosecution.

### III.

■ In addition to the theory of relief previously discussed, appellant makes numerous other claims of error. Many of these contentions are plainly without merit. For example, it is argued that the evidence was insufficient to support a conviction for dealing in firearms. In view of the extensive activity of the defendant in dealing with Agent Ennis, we reject such a contention as frivolous on its face. Likewise, we reject defendant's argument that the Gun Control Act of 1968 is violative of the Second Amendment guarantee of the right to bear arms. Cases v. United States, 131 F.2d 916 (1st Cir. 1942) cert. denied Velazquez v. United States, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1942).

■ The defendant raises two questions relating to the search of the various Lauchli premises on April 17, 1969. First, he questions whether or not probable cause existed for the issuance of the warrants to search appellant's home and the Lomax Machine Shop.

A detailed three-page affidavit, based on first hand information, was given in support of the search warrants. In the course of the affidavit, Agent Ennis recited his purchases of illegal firearms from the defendant and defendant's various offers to sell him other weapons which were kept on the property. In addition, the affidavit discloses that the defendant was not registered as a firearms dealer and that the illicit business was conducted on Lauchli premises.

We believe the affidavit recounted ample facts to establish that the affiant had reasonable grounds for believing the law was being violated on the premises to be searched. While it is true that only machine gun barrels were obtained by Ennis from the machine shop, it was reasonable for the Commissioner to infer from the course of defendant's conduct that the machine shop was an integral part of the defendant's illegal activities. Certainly, if one knows that articles are being assembled and sold and that a machine shop is on the vendor's premises, it is reasonable to believe that the machine shop is being used for the assembling of those articles. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1964).

■ Defendant's second contention with regard to the April 17 search concerns the discovery of 184 machine guns buried in the trash dump twenty-five yards from the machine shop[2]. Defendant argues that nothing in the affidavit even alludes to the dump, that the dump was not specified in the search warrants, and that the search therefore violated his Fourth Amendment rights. The government argues that the search warrant for the machine shop should be read to include the nearby trash dump. However, we need not decide this question since we believe the search was valid, under pre-Chimel law,[3] as incident to

---

2. Only Count 12 is affected by the seizure of weapons from the trash pile and the sentence on Count 12 runs concurrently with the sentence on three other counts.

3. The decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), is not retroactive and does not apply to this search. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The trash pile was under Lauchli's control and the arresting officers had reason to believe that weapons had been stored in an unenclosed area.[4]

■ Defendant next argues that because there was a delay of almost a year between arrest and trial, he was denied his right to a speedy trial.[5] Whatever the merits of this argument generally,[6] there is none here. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L. Ed.2d 627 (1966). Not only was the defendant involved in another criminal proceeding during the period in question, but was also heard in this case on a motion to suppress allegedly improper evidence.[7] Hence, no prejudice to the defendant has been shown.

[6] Defendant also points to the fact that no preliminary hearing was held, under Rule 5 of the Federal Rules of Criminal Procedure, as a ground for reversible error. While it is true that no hearing was held before the Commissioner, the Supreme Court has ruled, in Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), that the return of an indictment supersedes the complaint procedure. This court's decisions are consistent with that ruling. United States v. Amabile, 395 F.2d 47, 53–54 (7th Cir. 1968), vacated on other

grounds *sub nom.* Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Foster, 440 F.2d 390 (7th Cir. 1971); *but see* Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557, 559 (1967), and we decline to overrule those decisions.

■ Appellant's next contention is that the government has pyramided a single course of conduct into multiple counts and therefore imposed improper consecutive sentences on the defendant. The question, however, is not whether defendant's entire course of conduct was unlawful but whether each count of the indictment requires proof of a fact which another count does not. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Applying this standard to the various counts in the indictment, we find no violation of appellant's rights. The only arguable claim arises with regard to Counts I and II. Under Count I, Lauchli was charged with engaging in the business of dealing in firearms without being licensed by the Secretary of the Treasury (18 U.S.C. §§ 923(a) and 922(a) (1)) while in Count II, Lauchli was charged with dealing in firearms without registering with the District Director of Internal Revenue of the Internal Revenue Service. 26 U.S.C. §§ 5802 and 5861(a). Congress undoubtedly intended that these statutes, enacted under different titles of the United States Code, be treated as imposing distinct and separate requirements. Since

4. Our analysis of the search of the Lauchli premises relies on both the existence of valid search warrants and the authority to search incident to a valid arrest. Implicit in this view is our belief that the existence of the search warrants did not detract from the agents' authority, under *Rabinowitz* and *Harris, supra* text, to search the area under the defendant's possession and control. See Chimel v. California, 395 U.S. 752, 760, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search of the trash dump was not of an exploratory nature since it was based on statements by Lauchli that he had "two caches" of weapons and that he had stored weapons "out in the elements." By deciding the

various searches on dual grounds, we in no way undermine the prerogatives of the Commissioner in issuing search warrants since *Chimel, supra* has settled this beyond question.

5. Defendant relies on both the Sixth Amendment to the United States Constitution and Rule 48(b) of the Federal Rules of Criminal Procedure.

6. See the promulgation of rules by the Circuit Council of the Second Circuit regarding prompt disposition of criminal cases.

7. This motion, allegedly based on defendant's Fourth Amendment rights, was properly denied.

one mandates licensing by the Secretary of the Treasury and the other requires registration with the District Director of the Internal Revenue Service, no violation of the *Blockburger* principle or appellant's rights has occurred.

Defendant next urges that his sentence of twelve years is excessive. The sentence is not only within the statutory maximum, but also is running concurrently with another sentence of eight years. See United States v. Lauchli, 427 F.2d 258 (7th Cir. 1970). The district court observed the defendant throughout the trial, heard all the evidence, and was well informed as to defendant's background; there was no abuse of judicial discretion. See United States v. Brown, 428 F.2d 1191 (7th Cir. 1970).

Lastly, appellant argues that the district court erred in its rulings during a pre-trial hearing, and in denying defendant's motion to subpoena certain unnamed and unknown witnesses. We have examined these claims and find them without merit.

Accordingly, this cause is affirmed.

Affirmed.