**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Virgilio Patricio FLORES, Defendant-Appellant.**

No. 82–1445.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1983.

Decided May 3, 1983.

As Amended Oct. 24, 1983.

Supplemental Opinion March 28, 1984.

594

Carla M. Woehrle, Talcott, Vandevelde & Woehrle, Los Angeles, Cal., for defendant-appellant.

William Fahey, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before SCHROEDER and PREGERSON, Circuit Judges, and SOLOMON,* Senior District Judge.

PREGERSON, Circuit Judge:

Flores appeals from his conviction under the Federal Gun Control Act, 18 U.S.C. § 922(e) (1982),[1] for failing to provide written notice to a carrier before shipping firearms in foreign commerce. Appellant contends that (1) the notice requirement violated his Fifth Amendment privilege against self-incrimination, and (2) the district court erred in holding that the offense does not require proof of specific intent. Because we conclude that the notice requirement violates the Fifth Amendment, discussion of the specific intent question is unnecessary.

## I

Appellant Flores delivered to Ecuatoriana Airlines at Los Angeles International Airport for shipment to Ecuador two trunks with false bottoms containing a total of twenty-two handguns. He failed to notify Ecuatoriana of these guns and was charged with violating § 922(e).

Flores moved in district court to dismiss the charge on the ground that the notice requirement violated his Fifth Amendment privilege against self-incrimination. The motion was denied, and Flores was convicted.

Whether § 922(e) conflicts with the Fifth Amendment is a question of law requiring de novo review. *Oregon v. Riverfront Protection Association,* 672 F.2d 792, 794 (9th Cir.1982) (citation omitted).

## II

Appellant contends that the Fifth Amendment bars his prosecution because compliance with § 922(e) would require self-incrimination. The government argues that § 922(e) does not focus on unlawful activity or a discrete group of criminal suspects and that the notice requirement therefore does not impinge upon Fifth Amendment protections.

The Fifth Amendment "protects an accused ... from being compelled to ... provide the state with evidence of a testimonial or communicative nature" against himself. *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966); *see South Dakota v. Neville,* 459 U.S. 553, 559, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). "The central standard for the privilege's application is whether the claimant is confronted by substantial, and 'real' and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980) (citation omitted).[2] It is also rele-

* Honorable Gus J. Solomon, United States District Court for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 922(e) (1982) states:
   It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

2. The effect of a disclosure required before rather than after an offense is not an issue before this court. The Supreme Court has stated that "there is no reason to suppose that the force of the constitutional prohibition is diminished merely because confession of a guilty purpose precedes the act which it is subsequently employed to evidence." *Marchetti v. United States,* 390 U.S. 39, 54, 88 S.Ct. 697, 705, 19 L.Ed.2d 889

vant that the claimant is subject to (1) comprehensive proscriptions of activity, *Marchetti v. United States*, 390 U.S. 39, 48, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968); (2) prohibitions "directed at a highly selective group inherently suspect of criminal activities," *Haynes v. United States*, 390 U.S. 85, 98, 88 S.Ct. 722, 731, 19 L.Ed.2d 923 (1968) (quoting *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965) ); and (3) statutory requirements for disclosure of "information which [the accused] might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in a chain' of evidence tending to establish ... guilt," *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 703. Similar "hazards of prosecution under state law ... might support a proper claim of privilege as well." *Haynes*, 390 U.S. at 99 n. 13, 88 S.Ct. at 731.

*California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), provides an example of a disclosure requirement that does not impinge upon the privilege against self-incrimination. In that case, the Supreme Court upheld a California Vehicle Code section requiring drivers of motor vehicles involved in accidents to stop at the scene and give their names and addresses. The Court focused on the fact that the statute in question was "essentially regulatory, not criminal.... [It] was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents." *Id.* at 430, 91 S.Ct. at 1539. The Court emphasized that California law did not make it a criminal offense to be involved in an accident. *Id.* at 431, 91 S.Ct. at 1539. "Although identity ... may lead to inquiry that in turn leads to arrest and charge, those developments depend on different factors and independent evidence." *Id.* at 434, 91 S.Ct. at 1541.

The instant case differs significantly from *Byers*. Here, notice by appellant, not licensed as a firearms dealer, of his im-

pending transportation of firearms in foreign commerce would risk incrimination because the activity reported is illegal. Interstate or foreign shipments between unlicensed persons violate 18 U.S.C. §§ 922(a)(1), 922(a)(5) (1982) (limiting firearms transactions to licensed individuals only); 22 C.F.R. § 122.01 (1983) (requiring registration with Secretary of State as a firearms exporter); *id.* §§ 123.01, 127.01 (licensing requirements); 27 C.F.R. § 178.30 (1983) (prohibiting non-intrastate disposition of firearms by non-licensee); *id.* § 178.31 (similar to 18 U.S.C. § 922(e)); and Cal.Penal Code § 12070 (West 1982) (state licensing requirement).

Section 922(e) is part of comprehensive criminal statutory scheme that controls the licensing, sale, transportation, and importation of firearms. Under 18 U.S.C. § 922(f), for example, it is unlawful for a carrier to transport firearms in interstate or foreign commerce believing the shipment to be unlawful.

The statutory scheme suggests the presence of a real and substantial hazard of incrimination from disclosure of illegal transportation. The extent of the risk depends on whether a carrier that receives notice of an impending illegal shipment would notify prosecuting authorities. The airline must choose either to refuse to carry the items, notify authorities, or violate 18 U.S.C. § 922(f). Because "if a shipment was found to be in violation of the act, there would be someone culpable—either the carrier or the person who delivered the shipment," *United States v. Burton*, 351 F.Supp. 1372, 1376–77 (W.D.Mo.1972), the carrier would likely act to protect itself by notifying authorities.

Because any dealing in firearms by an unlicensed person is illegal, 18 U.S.C. § 922(a)(1), and because any shipment to an unlicensed person is also illegal, 18 U.S.C. § 922(a)(2), the statute is directed at "a highly selective group inherently suspect of criminal activities." *Haynes*, 390 U.S. at 98, 88 S.Ct. at 731. Yet the statute re-

(1968); *see United States v. Sher*, 421 F.2d 784, 785 (9th Cir.1970).

quires notice to the carrier of potential criminal activity. Such notice would amount to an admission of the essential elements for conviction under §§ 922(a)(1) and 922(a)(2) and thus would be a "significant link in a chain of evidence tending to establish guilt." *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 703.

The Fifth Amendment precludes the government from requiring persons to provide notice of impending firearms violations and then prosecuting them for failure to do so. Because compliance with 18 U.S.C. § 922(e) would violate appellant's Fifth Amendment privilege against self-incrimination, the conviction is reversed and the charge dismissed without prejudice as to other appropriate proceedings.

REVERSED.

## SUPPLEMENTAL OPINION FOLLOWING SUPPLEMENTAL BRIEFING

After we decided this case on May 3, 1983, and filed an amended opinion on October 24, 1983, the United States Court of Appeals for the Fourth Circuit decided *United States v. Wilson*, 721 F.2d 967 (4th Cir.1983). On November 30, 1983, we directed the parties to file supplemental briefs addressing the issues that *Wilson* raised. *Wilson* upheld § 922(e) against a Fifth Amendment attack. Having thoroughly considered these papers, we adhere to our conclusion that the notice requirement in § 922(e) is unconstitutional.

Relying on *Wilson*, the Government contends that § 922(e) does not violate Flores' Fifth Amendment right against self-incrimination because the statute requires him to report his illegal activity to a private party—the air carrier—rather than directly to the Government. We think this argument must fail.

The *Wilson* court's decision to reject a Fifth Amendment challenge to § 922(e) rests on the premise that the statutory notice requirement to the air carrier does not pose " 'substantial hazards of self-incrimination.' " *Wilson*, 721 F.2d at 974 (quoting *Marchetti v. United States*, 390

U.S. 39, 61, 88 S.Ct. 697, 709, 19 L.Ed.2d 889 (1968)). The Government therefore distinguishes *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (holding that the privilege against self-incrimination provides a full defense to prosecutions for failure to register firearms with the Treasury Secretary under 26 U.S.C. § 5841 and for possession of unregistered firearms under *id.* § 5841), which we relied on in Flores' case.

█ The Government's reasoning is flawed because a court must focus not on to whom or in what forum the disclosure is made, but instead on the disclosure's possible incriminatory effect. *See Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). As a result, the Fifth Amendment privilege against self-incrimination

> can be asserted in any proceeding, civil or criminal, administrative or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.

*Kastigar*, 406 U.S. at 444–45, 92 S.Ct. at 1653 (footnotes omitted); *see, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 103 S.Ct. 608, 617–18, 74 L.Ed.2d 430 (1983) (civil deposition); *In re Gault*, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967) (juvenile civil commitment proceeding); *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924) (bankruptcy proceeding); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir.1981) (civil discovery proceeding); *Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir.1979) (suit under 42 U.S.C. § 1983 (1976)).

█ Therefore, the test is whether the disclosure (1) contains information that the witness "might reasonably suppose would be available to prosecuting authorities," and (2) would furnish "a significant 'link in a chain' of evidence tending to establish ... guilt." *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 702 (footnotes and quotation omitted). In fact, "it is enough if the responses

would merely 'provide a lead or clue' to evidence having a tendency to incriminate." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.) (quoting *Hashagen v. United States*, 283 F.2d 345, 348 (9th Cir.1960)), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

■ Flores' case meets both parts of the test. As to part (2), we have already held, *supra* p. 597, that Flores' disclosure of § 922(e) information would constitute an admission of the essential elements for conviction under § 922(a)(1) and § 922(a)(2).

As to part (1), we find the Government's contention naive. Reasoning that § 922(f) imposes no duty on carriers to give the Government the names of persons who have violated § 922(e), the United States agrees with the *Wilson* court that there is only a "mere possibility," 721 F.2d at 974, that a common carrier will give incriminating information to the Government.

This argument ignores the comprehensive anti-hijacking regulatory scheme that the Government has imposed on air carriers and airport operators. To combat hijacking and other air crimes, the Government requires carriers and operators to conduct security checks and keep extensive records, all for the purpose of apprehending air criminals. *See, e.g.*, 14 C.F.R. § 249 (1983) (requiring air carriers to preserve certain security and other records); *id.* § 107.23 (requiring airport operators to record, among other things, the number and type of firearms and explosives identified through screening procedures); 44 C.F.R. § 401.3 (1982) (requiring officials subject to air safety regulations to submit reports on the shipping of arms and ammunition to the Assistant Secretary for Domestic and International Business); *id.* § 401.4 (requiring maintenance of such records for 2 years).

Indeed, we have held that this regulatory scheme is so pervasive that, since 1968, it has transformed private airline and airport personnel into government agents for the purpose of Fourth Amendment analysis in the context of airport security programs. *United States v. Davis*, 482 F.2d 893, 895,

897 (9th Cir.1973), *followed in United States v. Henry*, 615 F.2d 1223, 1228 (9th Cir.1980).

In light of this comprehensive regulatory scheme, we find it hard to believe that there is only a "mere possibility" that air carriers will report illegal firearms dealers to the Government. A person required to give notice under § 922(e) has plenty of reasons to suppose that his disclosures will be available to prosecuting authorities in the manner that the *Marchetti* test contemplates.

The Government counters that language in *Illinois v. Andreas*, —— U.S. ——, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), undercuts the notion that Fifth Amendment protections operate in this case. In that case, the Supreme Court said:

> When common carriers discover contraband in packages entrusted to their care, it is routine for them to notify the appropriate authorities. The arrival of police on the scene to confirm the presence of contraband and to determine what to do with it does not convert the private search by the air carrier into a government search subject to the Fourth Amendment.

*Andreas*, 103 S.Ct. at 3323 n. 2.

We think the Government misapprehends the import of this language in three respects.

First, the Government's argument confuses the Fourth Amendment "state action" problem that was present in *Andreas* with the Fifth Amendment self-incrimination problem that is present in Flores' case. The two problems raise fundamentally different concerns. We agree that a purely private airport search—one that is not conducted pursuant to an airport regulatory scheme—does not invoke Fourth Amendment protections. Unless the Government is implicated in the search, the state action needed to invoke the Fourth Amendment is absent. But the possibility of state action lurks in all instances in which a witness properly claims the Fifth Amendment privilege, because only the state has the power

to prosecute criminal conduct. As we noted *supra,* the operation of Fifth Amendment protection does not depend on the context in which the privilege is invoked. A witness may invoke his right not to testify against himself in any proceeding, whether civil or criminal, in which he reasonably believes that so testifying would provide the Government with the information to prosecute him later.

Second, we distinguish *Andreas* on its facts. *Andreas* decided only that law enforcement officers did not need to obtain a search warrant to re-open a sealed object containing marijuana that customs officials had discovered during an earlier, but lawful, customs search. The Court neither addressed nor decided any question bearing on the constitutionality of air carrier activities that implicate the Fifth Amendment.

Finally, the above-quoted language itself states that, when common carriers discover contraband, "[I]t is routine for them to notify the appropriate authorities." This practice contradicts the position that the United States urges upon us. If air carriers routinely tell federal officials that arms smugglers are shipping unregistered weapons, we would be surprised to learn that the Government failed to use this information to apprehend and prosecute the smugglers. Therefore, we think the language in *Andreas* that the Government relies on actually supports, rather than refutes, the application of the Fifth Amendment privilege to the notice requirement in § 922(e).

For these reasons, we adhere to our view that § 922(e) poses substantial hazards of self-incrimination.